PATRICIA HENDERSON *et al.*, Plaintiffs-Appellants, v. JESSE L. MILLER, JR., Defendant-Appellee.

First District (6th Division)   No. 1—91—1379

Opinion filed April 10, 1992.

Holstein, Mack & Klein, of Chicago (Anthony B. Bass and Thayer C. Torgerson, of counsel), for appellants.

Ahern, Butler & Glover, of Chicago (Maurice R. Glover and Cecil C. Butler, of counsel), for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

The defendant, Jesse L. Miller, Jr., is presently the alderman of the 24th ward in the City of Chicago. The plaintiffs, Patricia Henderson and Diane Logan, appeal from an order denying their petition for leave to file a complaint in *quo warranto* in which they sought the removal of the defendant from the office of alderman. The trial judge held that the plaintiffs lacked standing to bring the action, that the action was time barred and that the circuit court lacked original jurisdiction. The defendant contends that the trial judge correctly denied leave to file the complaint on the grounds he ascribed; the defendant also maintains that the judge's order should be affirmed on the additional ground that the complaint failed to state a cause of action.

On December 10, 1990, the defendant filed his sworn statement of candidacy with the Board of Election Commissioners for the City of Chicago, requesting that his name be placed on the election ballot for alderman of the 24th ward. The statement of candidacy included the following sworn statement of the defendant:

"I, JESSE L. MILLER, JR., being first duly sworn, say that I reside at 1109 SOUTH AVE. [*sic*] Street, in the CITY of CHICAGO Zip Code 60612 in the county of COOK State of Illinois; that I am a qualified voter therein, that I am a candidate for ELECTION to the office of ALDERMAN in the 24TH WARD CITY OF CHICAGO to be voted upon at the ELECTION to be held on the 26TH day of FEBRUARY, A.D. 1991 and that I am legally qualified to hold such office and that I have filed (or I will file before the close of the petition filing period) a Statement of Economic Interests as required by the Illinois Governmental Ethics Act and I hereby

request that my name be printed upon the official ballot for ELECTION for such office."

The statement was signed by the defendant and notarized. At the top of the statement is a box for an address; in the box is "1109 South Troy Avenue, Chicago, IL 60612." The plaintiffs make no issue of the discrepancy in the address that is contained in the body of the sworn portion of the statement of candidacy.

The preliminary election for alderman of the 24th ward was held on February 26, 1991. The defendant did not receive a majority of the votes cast; therefore, his name was placed on the supplementary aldermanic ballot for the election to be held on April 2, 1991. On March 26, 1991, the plaintiffs, residents of the 24th ward, filed a *quo warranto* complaint in the circuit court of Cook County seeking to have the defendant's candidacy declared unlawful. The complaint alleged that the defendant fraudulently represented on his statement of candidacy that he was a registered voter at 1109 South Troy Avenue in Chicago, when he was in fact a registered voter at 1647 South Springfield in Chicago; that he did not become a registered voter at 1109 South Troy until February 28, 1991; and that the defendant had violated the campaign disclosure act (Ill. Rev. Stat. 1989, ch. 46, par. 9—1 *et seq.*) by failing to account for his campaign contributions and expenditures.

In accordance with section 18—103 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 18—103), before filing the complaint, the plaintiffs had requested the State's Attorney of Cook County and the Illinois Attorney General to investigate and prosecute the defendant's alleged fraud and violations of the campaign disclosure act. Neither office answered the plaintiffs' request.

Some time before the *quo warranto* complaint was filed in the chancery division of the circuit court, the plaintiffs had filed a complaint against the defendant with the State Board of Elections alleging that the defendant had not filed forms required by the campaign disclosure act and had failed to report contributions and expenditures for his campaigns for alderman and the water reclamation district.

On February 25, 1991, the State Board of Elections (Board) entered a "Final Determination and Order" in which the Board found that the defendant had violated the act by failing to file the required forms and by failing to report contributions and expenditures. The Board ordered the defendant to create a committee to file the appropriate forms within 10 days of receipt of the order. The order further provided that any failure or refusal by the com-

mittee to comply with the terms of the order would result in the automatic imposition upon the committee and its officers a civil penalty not to exceed $1,000. A copy of the order was attached to the *quo warranto* complaint.

On April 2, 1991, the defendant defeated his opponent in the runoff election and was elected alderman of the 24th ward. The chancery division judge granted the plaintiffs leave to file an "Emergency Motion for Temporary Restraining Order and Declaratory Judgment" on April 5, 1991, requesting that the defendant be enjoined from taking the oath of office. The plaintiffs' motion alleged that the defendant "knowingly circulated petitions stating he was registered to vote at 1109 South Troy Avenue, Chicago, when, in fact, he was not a registered voter therein." Attached to the plaintiffs' motion was their "First Amended Complaint In *Quo Warranto,* Declaratory Judgment and Injunctive Relief." The matter was transferred from the chancery division to the county division on April 5, 1991.

On April 18, 1991, the county division judge entered an order enjoining the defendant from taking the oath of office for alderman of the 24th ward and from performing any of the duties of the office of alderman.

On April 23, 1991, the defendant filed a motion requesting that the judge dissolve the temporary restraining order, dismiss the complaint in *quo warranto* and dismiss the petition for declaratory judgment and injunctive relief. After a hearing, the judge dissolved the temporary restraining order and continued the motion to dismiss.

On May 1, 1991, the judge dismissed the complaint for declaratory judgment on the ground that the plaintiffs lacked standing. Relying on *Thurston v. State Board of Elections* (1979), 76 Ill. 2d 385, 392 N.E.2d 1349, he held that the plaintiffs' claim was barred by *laches*. Relying on *People ex rel. Klingelmueller v. Haas* (1982), 111 Ill. App. 3d 88, 443 N.E.2d 782, he held that the circuit court had power only to review the decision of an electoral board but had no original jurisdiction to determine the validity of the defendant's nominating papers. His order dismissed both the plaintiffs' complaint for declaratory judgment and their petition for leave to file a complaint in *quo warranto*.

We note that the notice of appeal refers only to the order denying the plaintiffs leave to file a complaint in *quo warranto*; it makes no reference to the dismissal of the complaint for declaratory judgment. The plaintiffs' attorney informed us in oral argu-

ment that we need not address the propriety of the order dismissing the declaratory judgment complaint.

The *quo warranto* complaint alleged two acts of wrongdoing on the part of the defendant: (1) he "fraudulently misrepresented that he was a registered voter at 1109 South Troy Avenue," (2) he "is currently in violation of the Campaign Disclosure Act *** in that he has failed to account for contributions and expenditures for the campaign for Alderman for the 24th Ward." The issues of *laches* and jurisdiction apply only to the allegation of fraudulent misrepresentation in the nominating papers. Because resolution of those issues would not resolve the entire case, we need not discuss them. The issues of standing and sufficiency of the complaint apply to both allegations of wrongdoing. Because we conclude that the judgment should be affirmed for both lack of standing and the insufficiency of the complaint, we address only those issues.

▮▮ Stated briefly, the allegation of the complaint that the defendant "fraudulently misrepresented that he was a registered voter at 1109 South Troy Avenue" is mistaken. In the statement of candidacy the defendant said, "I *reside* at 1109 South [Troy Avenue] in the City of Chicago Zip Code 60612 in the county of Cook State of Illinois" and "I am a qualified voter therein." (Emphasis added.) Our reading of the exhibit shows that the defendant did not swear that he was a voter at 1109 South Troy; he swore only that he resided there. When facts alleged in a complaint differ from those shown by an exhibit attached to the complaint, the exhibit controls. (*Friedman v. Gingiss* (1989), 182 Ill. App. 3d 293, 537 N.E.2d 1067.) The plaintiffs now ask us to infer that when the defendant swore he was a "voter therein," he was swearing that he was a voter at 1109 South Troy and not in the City of Chicago. We must decline to do so.

The Municipal Code requires only that a candidate for alderman "reside within the ward for which he is elected" and be "a qualified elector of the *municipality*." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 24, pars. 3—4—15, 3—14—1.) The act does not require that a candidate be a voter at his place of residence. The defendant's statement of candidacy is on a form provided by the Board of Election Commissioners of the City of Chicago. If the plaintiffs' argument is correct, the form provided by the board requires a candidate to swear to something which the statute itself does not require. The illogic of the plaintiffs' argument is apparent. We agree with the defendant's contention that his statement of candidacy did not fraudulently misrepresent that he was a "voter at 1109 South

Troy." Consequently, removing the defendant from office based on that allegation would not be justified.

The plaintiffs correctly point out that the judge did not address the allegation that the defendant had violated the campaign disclosure act. We can understand the judge's abstention from deciding that question, since he held that the plaintiffs lacked standing to maintain any *quo warranto* complaint. The plaintiffs also correctly point out that the defendant has not answered their argument that violation of the campaign disclosure act would justify the defendant's removal from office. Although the defendant has not answered the argument, we will address it. See *Korogluyan v. Chicago Title & Trust Co.* (1991), 213 Ill. App. 3d 622, 572 N.E.2d 1154.

■■ ■ The *quo warranto* act provides that "[a] proceeding in *quo warranto* may be brought in case: *** (3) any public officer has done, or allowed any act *which by the provisions of law*, works a forfeiture of his or her office." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 110, par. 18—101(3).) The campaign disclosure act provides that, where the Board directs a person in violation of its provisions to cease or correct the violation and such person fails or refuses to comply with the order, the Board may impose a civil penalty on such person in an amount not to exceed $1,000. The Board may petition the circuit court for an order to enforce collection of the penalty and the Board may report the violation and any failure to comply with the order to the Attorney General or the appropriate State's Attorney. (Ill. Rev. Stat. 1989, ch. 46, par. 9—23.) The Board may also petition the circuit court for an order compelling compliance with an order or enjoining a person from violating the act. (Ill. Rev. Stat. 1989, ch. 46, par. 9—24.) Willful failure to file or willful filing of false or incomplete information shall constitute a Class B misdemeanor and prosecution shall be brought by the appropriate State's Attorney or the Attorney General. (Ill. Rev. Stat. 1989, ch. 46, par. 9—26.) There is no provision in the act for removal from office for any violation of its requirements. In contradistinction, the Election Code expressly provides that a statement of economic interests shall be filed within a prescribed time (Ill. Rev. Stat. 1989, ch. 46, par. 10—5), and the Illinois Governmental Ethics Act provides that failure to file a statement of economic interests within the time prescribed shall result in ineligibility for, or forfeiture of, office. Ill. Rev. Stat. 1989, ch. 127, par. 604A—107; see also *Welch v. Johnson* (1992), 147 Ill. 2d 40.

There are a number of other statutes which expressly provide that a violation of their provisions results in forfeiture of office. (See, *e.g.*, Ill. Rev. Stat. 1989, ch. 38, par. 33—3 (official misconduct); Ill. Rev. Stat. 1989, ch. 24, par. 4—8—2 (bribery by a nominee or candidate); Ill. Rev. Stat. 1989, ch. 34, par. 5—36009 (conflict of interest of county officers and employees).) It is apparent that, when the legislature intends that an office shall be forfeited for violation of a statute, the legislature will say so.

■ Before a statute may be construed to include a penalty, including forfeiture of office, it must be clear that the legislature intended to include it. It is a fundamental rule of statutory construction that any ambiguity in a statute must be resolved against the inclusion of a penalty. (*Saskill v. 4-B Acceptance* (1985), 139 Ill. App. 3d 143, 487 N.E.2d 97.) Invoking that rule of construction, we conclude that the legislature did not intend that a violation of the campaign disclosure act constituted a ground for removal from office. Therefore, the conduct of the defendant did not come within the provisions of the *quo warranto* act. Ill. Rev. Stat. 1989, ch. 110, par. 18—101(3).

For these reasons, we conclude that the two allegations of wrongdoing are not sufficient to support the complaint and that the trial judge properly denied leave to file the complaint in *quo warranto*.

■ We also conclude that the trial judge correctly denied leave to file the *quo warranto* complaint on the ground that the plaintiffs lacked standing. The right to institute an action in *quo warranto* belongs to the State; thus, originally only the State's Attorney or the Attorney General could bring the action. Over time, the law evolved to allow a private person having a distinct private interest in the subject matter to apply to the Attorney General or the State's Attorney to institute the proceeding on his behalf. If the petition met certain requirements, the authorities were required to institute the action, and if they refused to do so, a court could compel them by *mandamus* to file the action. See *People ex rel. Miller v. Fullenwider* (1928), 329 Ill. 65, 160 N.E. 175.

In cases involving matters of public interest, however, Illinois courts have consistently held that only the Attorney General or the State's Attorney, as representatives of the people, have standing to institute *quo warranto* proceedings. (See *People ex rel. Raster v. Healy* (1907), 230 Ill. 280, 82 N.E. 599.) Moreover, in matters of purely public interest, these officials have complete, arbitrary and

unfettered discretion as to whether they shall institute the action. *People v. Wood* (1952), 411 Ill. 514, 104 N.E.2d 800.

Under current Illinois law, a private citizen seeking to bring an action in *quo warranto* on his own behalf must first request the Attorney General or the State's Attorney to file the action. (Ill. Rev. Stat. 1989, ch. 110, par. 18—103.) If those officers refuse or fail to act, the individual may petition the court for leave to file the action. In order to obtain leave, an individual must demonstrate that he has standing by showing that he has a private interest which is directly, substantially and adversely affected by the challenged act, which is either then occurring or certain to occur, and which is distinct from the interests of the general public, even though some members of the public might be affected in the same manner. (*People ex rel. Turner v. Lewis* (1982), 104 Ill. App. 3d 75, 432 N.E.2d 665.) Filing a complaint in *quo warranto* is not a matter of right, and whether leave to institute the action should be granted lies within the sound discretion of the trial court. (*People ex rel. Nelson v. Village of Long Grove* (1988), 169 Ill. App. 3d 866, 523 N.E.2d 656.) The court should consider all the circumstances of the case, including whether the proceeding will benefit the public. See, *e.g., People ex rel. Hanrahan v. Village of Wheeling* (1976), 42 Ill. App. 3d 825, 356 N.E.2d 806.

In *People ex rel. Turner v. Lewis* (1982), 104 Ill. App. 3d 75, 432 N.E.2d 665, a case relied upon by the trial judge, the plaintiff was denied leave to file an action in *quo warranto* against the appointed State's Attorney. The plaintiff argued that he had standing because he was a taxpayer in the county, relying on *People ex rel. McCarthy v. Firek* (1955), 5 Ill. 2d 317, 125 N.E.2d 637. The appellate court distinguished *Firek,* noting that in that case standing was premised on direct adverse tax consequences certain to be suffered by the plaintiffs. The *Turner* plaintiff alternatively argued that he had standing as a citizen and voter in the county. The appellate court dismissed this argument, holding that the defendant's occupation of the office of State's Attorney had not harmed the plaintiff as a citizen or voter in any respect which was distinct from the harm suffered by every other citizen and voter in the county.

In *Allen v. Love* (1983), 112 Ill. App. 3d 338, 445 N.E.2d 514, another case relied upon by the trial judge, the plaintiffs argued that they had standing to bring a *quo warranto* and declaratory judgment action against the chief financial officer of the Chicago Board of Education because they were residents and taxpayers in the city, and because they had children enrolled in the Chicago pub-

lic school system. The appellate court held that taxpayer status alone was insufficient to give the plaintiffs standing, as they had not alleged that the defendant's failure to timely file a statement of economic interests would result in financial loss or other injury to them. Similarly, the court held that the interest of the parents of Chicago public school students in assuring compliance with the ethics act was not a personal interest sufficient to confer standing to maintain a *quo warranto* action. Accordingly, the court held that only the Attorney General or the State's Attorney would have standing to bring a *quo warranto* action against the defendant.

The plaintiffs allege that as residents and voters of the 24th ward, their interests are distinct from those of persons residing outside the 24th ward. However, in *Turner*, the plaintiff's interest was distinct from that of persons residing outside his county, and in *Allen*, the interest of the parents of Chicago public school students was distinct from that of other persons. Nonetheless, their interests were not sufficiently personal and distinct from the interests of the general public to give them standing. The plaintiffs further allege that their alderman represents each one of them individually, and each of them expects any alderman to be honest, truthful and mindful of his duty as a public official. This interest, however, is not personal to these two plaintiffs; rather, it is shared by all residents of the 24th ward. (See *People ex rel. Hiller v. Bevirt* (1938), 297 Ill. App. 335, 17 N.E.2d 629.) We conclude that the trial judge properly relied on *Turner* and *Allen* and held that the plaintiffs lacked standing to bring the *quo warranto* action.

The plaintiffs rely principally on *Kluk v. Lang* (1988), 125 Ill. 2d 306, 531 N.E.2d 790. We do not believe that *Kluk* supports standing of the plaintiffs here. In *Kluk* the supreme court emphasized that the plaintiffs were challenging the constitutionality of a statute which, in effect, denied their right to vote to fill a vacancy in the State legislature. The court also emphasized the fact that *Kluk* involved a complaint for declaratory judgment and that the standing requirements for *quo warranto* were "stricter than those for declaratory judgment standing." 125 Ill. 2d at 320.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

RAKOWSKI and LaPORTA, JJ., concur.