PER CURIAM.
S.C.W. (“the biological father”) appealed to the Court of Civil Appeals from a judgment granting the petition for adoption filed in this case by R.E.L. and C.A.L. (“the adoptive parents”). The juvenile court held that the biological father’s failure to comply with the Putative Father Registry Act, §§ 26-10C-1 and -2, Ala. Code 1975 (“the Registry Act”), constituted his implied consent to the adoption of his biological child. P.D. and S.D.H., the biological father’s attorneys, appealed to the Court of Civil Appeals from a judgment sanctioning them pursuant to the Alabama Litigation Accountability Act, §§ 12-19-270 et seq., Ala.Code 1975 (“the ALAA”). The Court of Civil Appeals affirmed the judgments. S.C.W. v. C.B., 826 So.2d 825 (Ala.Civ.App.2001). We granted certiorari review; we reverse and remand.
For a detailed account of the facts in this case, see the Court of Civil Appeals’ opinion, 826 So.2d at 827-32. We summarize only the pertinent facts.
The biological parents are unmarried teenagers. In October 1998, C.B. (“the biological mother”), gave birth to a child. Testing confirmed the paternity of the biological father. The biological mother had decided to place the child for adoption, against the wishes of the biological father and his family. Upon the birth of the child, the adoptive parents, who were selected by the biological mother, took custody of the child; they have had custody of the child since that time.
The biological father and the adoptive parents filed petitions in different counties relating to the child. The adoptive parents filed in the Autauga County Probate Court a petition for adoption and obtained an interlocutory order giving them custody of the child. The biological father filed in the Elmore County Probate Court, among other petitions and motions, a petition for a declaration of legitimation, a petition to change the child’s name, and a petition for a paternity adjudication and for custody. These proceedings were eventually consolidated into one proceeding in the Elmore Juvenile Court.
The biological father did not file with the Department of Human Resources, within the time required by the Registry Act (i.e., within 30 days of the birth of the child), a notice of intent to claim paternity pursuant *847 to the Registry Act. In January 1999, a news reporter told the biological father about the Registry Act. He filed the notice required by the Registry Act on January 16,1999.
In August 1999, the biological mother and the adoptive parents moved to dismiss the biological father’s legitimation and paternity actions, and moved for a summary judgment in the adoption action, arguing that the biological father had consented to the child’s adoption by failing to timely file the required notice pursuant to the Registry Act. On September 1, the juvenile court entered a summary judgment in favor of the adoptive parents based on the biological father’s failure to comply with the Registry Act. On September 14, the biological father moved for a declaratory judgment, questioning the constitutionality of the Registry Act. The juvenile court denied his motion two days later.
The biological father appealed to the Court of Civil Appeals from the summary judgment, but on January 4, 2000, that court remanded the case with instructions for the juvenile court to conduct a final dispositional hearing on the adoption petition. The juvenile court held the hearing and then entered a final judgment of adoption, granting the adoptive parents’ petition to adopt the child.
The Court of Civil Appeals affirmed the judgment of adoption, holding that the biological father’s failure to comply with the Registry Act was dispositive and rejecting his arguments that the Registry Act is unconstitutional as applied to him and that he had substantially complied with the Registry Act by filing petitions for legitimation and paternity.[1] Judge Craw-ley dissented. In his dissent, Judge Crawley stated that he believed the Registry Act and the Alabama Adoption Code, § 26-10A-1 et seq., Ala.Code 1975 (“the Adoption Code”), were in conflict, and he explained how the two statutes could be harmonized to give effect to each. He concluded that the juvenile court had erred in entering the judgment of adoption. He also concluded that if the Court of Civil Appeals had reversed the judgment, the judgment imposing sanctions against the biological father’s attorneys should also be reversed.
After considering the voluminous record in this case, the Court of Civil Appeals’ opinion, Judge Crawley’s dissent, cases from courts in several of our sister states that have considered the problem presented here, and the adoption codes and putative-father registry statutes of many of our sister states, we agree with the views expressed by Judge Crawley in his well-researched dissent. We quote Judge Crawley’s dissent below:
“I believe that the Putative Father Registry Act and portions of the Alabama Adoption Code conflict, and, by harmonizing the two statutes, I conclude that registering with the putative-father registry is but one way a putative father like S.C.W. can entitle himself to receive notice of, and a right to contest, the proposed adoption of his child. Therefore, I would reverse the summary judgment holding that the putative father had irrevocably impliedly consented to the adoption pursuant to § 26-10C-l(i), would vacate the judgment finalizing the adoption, and would instruct the court to *848 hold a contested hearing, pursuant to Ala.Code 1975, § 26-10A-24. In light of my resolution of what I perceive as a conflict between the statutes, I would also reverse the sanctions imposed against P.D. and S.D.H. pursuant to Ala. Code 1975, § 12-19-270 et seq., the Alabama Litigation Accountability Act (the ‘ALAA’).

“The Effect of the Putative-Father Registry on the Alabama Adoption Code

“Section 26-10A-17, Ala.Code 1975, a part of the Alabama Adoption Code, lists the persons who must receive notice of an adoption proceeding. One of those persons is ‘the putative father of the adoptee if made known by the mother or otherwise known by the court.’ See § 26-10A-17(a)(10). Section 26-10A-7, Ala.Code 1975, lists the persons whose consent (or whose relinquishment of the child) is required for an adoption. One of those persons is ‘[t]he putative father if made known by the mother or ... otherwise made known to the court provided he responds within 30 days to the notice he receives under Section 26-10A-17(a)(10).’ See § 26-10A-7(5), Ala. Code 1975. ‘[T]he persons listed in section 26-10A-7 have an absolute veto power over the proposed adoption.’ § 26-10A-7 (Commentary).
“The foregoing statutes demonstrate that the Alabama Adoption Code gives a putative father the right to veto the adoption of his biological child when two circumstances are present: (1) the court is made aware of the identity of the putative father, and (2) the putative father, having received notice of the proposed adoption, responds to the notice within 30 days. Both circumstances are present in this case.
“The court handling the adoption was made aware of the identity of the putative father. On October 30, 1998, when the child was two days old, the adoptive parents filed an adoption petition in the Autauga Probate Court. On November 12, when the child was 15 days old, the putative father was ‘made known to the court’ when the guardian ad litem appointed by the Elmore Probate Court to represent the child in the legitimation proceeding informed the adoption court that the putative father had previously filed a declaration of legitimation in the Elmore Probate Court and wished to contest the adoption.
“The putative father timely responded to the notice of the adoption proceeding. On December 24, the putative father was served with the adoption petition. On December 1, the putative father, apparently having had actual knowledge of the petition before December 24, filed a contest of the adoption. It is undisputed that the putative father ‘responded] within 30 days to the notice he receive[d] under Section 26-10A-17(a)(10).’
“Reading only the provisions of the Alabama Adoption Code in isolation, I think it is clear that a putative father like S.C.W., whose identity was made known to the court and who timely responded to the notice provided him, had the power to halt the adoption of his child. However, S.C.W. was unable to prevent the adoption in this case because the adoptive parents convinced the trial court that the provisions of another statute, outside the Alabama Adoption Code — a statute neither cross-referenced nor mentioned by name in the Alabama Adoption Code itself — superseded the provisions of the Alabama Adoption Code. The statutory provision upon which the adoptive parents relied is known as the ‘Putative Father Registry Act’ and is found at § 26-10C-1, Ala.Code 1975.
*849 “The Putative Father Registry Act directs the Department of Human Resources (‘DHR’) to establish a registry for males who intend to claim paternity of a child born out of wedlock, or whose paternity of such a child has been adjudicated or acknowledged. The Act requires that a notice of intent to claim paternity include the names of the father and mother of the child born out of wedlock, their addresses, Social Security numbers, and dates of birth, as well as current income and financial information concerning the father. The Act dictates that the child’s name and place of birth, if known, and the date or dates of sexual intercourse between the parents, be listed. Subsection (f) of the Act provides that the information contained in the registry shall not be divulged except upon court order. That subsection further directs DHR, when it receives notice of a pending adoption, to search the registry for a correspondence between the biological mother, the prospective adoptee’s date of birth, and the information provided by putative fathers. The statute mandates that, if DHR finds a correspondence, it must notify the court handling the adoption of the putative father’s notice of intent to claim paternity of the prospective adoptee so that notice of the pending adoption can be given to him.
“Subsection (i) of the Act provides: “‘Any person who claims to be the natural father of a child and fails to file his notice of intent to claim paternity pursuant to subsection (a) prior to or within 30 days of the birth of a child born out of wedlock, shall be deemed to have given an irrevocable implied consent in any adoption proceeding.’
“§ 26-10C-l(i), Ala.Code 1975.
“Subsection (i), a part of the Putative Father Registry Act, establishes the irrevocable implied consent to adoption of any putative father who fails to file with the registry. Section 26-10A-7(5), a part of the Alabama Adoption Code, gives a putative father whose identity has been made known to the court and who timely responds to notice of the adoption, veto power over an adoption. Sections 26-10C-l(a) and (i) appear to authorize only one way for a putative father to be ‘made known’ to an adoption court, namely: the putative father must file with the putative-father registry. On the other hand, § 26-10A-7(5) seems to envision more than one way in which a putative father could be ‘made known’ to the adoption court, namely: (1) the biological mother could make the court aware of the putative father or (2) the putative father could be ‘otherwise known by the court.’ The last or ‘catchall’ means of making a putative father known to the court — the ‘otherwise-known-by-the-court’ method — is, in contrast to the relevant section of the Putative Father Registry Act, open-ended, comprehensive, and nonexclusive. The catchall provision encompasses, for example, the means employed in this case: notification by a guardian ad litem. The provision does not exclude such other ways of making a putative father ‘known by the court’ as the court’s noting that the putative father has filed a paternity action or a declaration of legitimation. The exclusivity of the method for making a putative father known to the court provided by the Putative Father Registry Act contrasts sharply with the inclu-sivity of the catchall provision in the Alabama Adoption Code. The two statutes conflict.
“It is well settled that adoption is purely statutory, unknown to the common law, and that strict statutory adherence is required. Ex parte Sullivan, 407 So.2d 559 (Ala.1981). Because the Alabama Adoption Code is a comprehen *850 sive legislative package relating to a single subject, I cannot conclude that the Putative Father Registry Act (a later enactment not a part of the Alabama Adoption Code) repeals by implication inconsistent portions of the Alabama Adoption Code. Repeal by implication is not favored in the law. See Radzanower v. Touche Ross & Co., 426 U.S. 148, 155[, 96 S.Ct. 1989, 48 L.Ed.2d 540] (1976). Repeal by implication is found ‘only when two laws are so repugnant to or in conflict with each other that it must be presumed that the Legislature intended that the latter should repeal the former.’ City of Birmingham v. Southern Express Co., 164 Ala. 529, 538, 51 So. 159, 162 (1909) (quoted in Hall v. Teipie-Ching Chi 782 So.2d 218, 222 (Ala.2000)). Unless two statutes are in irreconcilable conflict, it is the court’s duty to regard each as effective and to arrive at a construction that will harmonize the seeming conflict and give each statute a reasonable field of operation. See, e.g., Benson v. City of Birmingham, 659 So.2d 82 (Ala.1995).
“ ‘Courts are not at liberty to pick and choose among legislative enactments, and when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed legislative intention to the contrary, to regard each as effective.’
“Hayden v. Blue Cross & Blue Shield of Alabama, 843 F.Supp. 1427, 1437 (M.D.Ala.1994). This court has the duty to construe provisions within a statutory plan in harmony with each other. J.N.H. v. N.T.H., 705 So.2d 448 (Ala.Civ.App.1997). In interpreting statutory language, a court does not look at one word or one provision in isolation, but rather looks to a whole statutory scheme for clarification and contextual reference. United States v. McLemore, 28 F.3d 1160 (11th Cir.1994). An adoption statute ‘should be interpreted to give consistent, harmonious and sensible effect to all its parts.’ N. Singer, 3A Sutherland Statutes and Statutory Construction § 68.04 at 104 (5th ed.1992).
“Applying the foregoing principles of statutory construction to the inconsistency between § 26-10A-7(5) and § 26-10C-l(i), I would hold that the conflict between the Alabama Adoption Code and the Putative Father Registry Act is not irreconcilable, and that it is possible to construe the provisions so that each statute has a reasonable field of operation. I would conclude that, because § 26-10A-7(5) — the consent provision of the Alabama Adoption Code — is part of a unified scheme relating to a single subject, one portion of a comprehensive whole, it takes priority over § 26-10C-l(i> — the irrevocable-implied-consent provision of the Putative Father Registry Act — because the latter statute is a separate enactment, outside the Alabama Adoption Code, and is not cross-referenced by the Alabama Adoption Code. Other jurisdictions that give pre-clusive effect to a man’s failure to file with a putative-father registry state (or at least cross-reference) in their adoption codes the requirement of filing with the registry. See Ariz.Rev.Stat. Ann. § 8-106.01 (1997); Conn. Gen.Stat. Ann. §§ 45a-716 and 45a-724 (1996); Ga. Code Ann. § 19-11-9 (1997); Idaho Code § 16-1513 (1994); 750 Ill. Comp. Stat. 50/12 (West 1997); Ind.Code § 31-19-5-12 (1997); La.Rev.Stat. Ann. § 9:400 (1993); Mich. Comp. Law § 710.33 (1993); Minn.Stat. § 259.52 (1997); Mo.Rev.Stat. § 453.030 (1997); Neb.Rev.Stat. § 43-104.02 (1997); 1993 N.M. Laws § 32-A-5-19 (1997); N.Y. Dom. Rel. Law § 111 a (McKinney 1997); Ohio Rev.Code Ann. § 3107.062 (Anderson 1996); Okla. Stat. tit. 10, § 7506-1.1 (1998); Tenn.Code Ann. § 36-2-318 (1997); Utah Code Ann. *851 § 78-30A.14 (1995); Wyo. Stat. Ann. § 1-22-117 (1995). The Alabama Adoption Code does not mention the Putative Father Registry Act.
“The Putative Father Registry Act has two purposes: ‘protecting the rights of responsible fathers and facilitating speedy adoptions of children whose fathers do not wish to assume parental responsibility.’ Note, ‘Protecting the Unwed Father’s Opportunity to Parent: A Survey of Paternity Registry Statutes,’ 18 Rev. Litig. 703, 727 (1999). Those purposes are not undermined by allowing a putative father to be ‘made known’ to the adoption court in a variety of ways (such as by the putative father’s filing a paternity action or a declaration of legitimation). The Putative Father Registry Act can be harmonized with the Aabama Adoption Code by holding that filing with the registry is just one of several ways in which a putative father can bring about judicial awareness of his paternity claim. Cf. Diemert v. City of Mobile, 474 So.2d 663 (Ala.1985) (holding that §§ 11-47-192 and 11-47-23, which require a claimant to file a sworn statement with the municipal clerk within six months of the accrual of a tort claim against the City, are satisfied by filing a complaint against the City within the limitations period). I see no need to outline all of the means by which a putative father can, consistent with the dictates of the Aabama Adoption Code, bring his claim to the attention of a judicial tribunal, but I would hold that the means employed by the putative father in this case' — filing a declaration of legitimation and a paternity complaint— were sufficient. Those means were not only equivalent to filing with the putative-father registry, but were, in fact, superior. The Putative Father Registry Act requires a notice of intent to claim paternity. S.C.W.’s legitimation and paternity actions constituted actual claims of paternity. To hold that, by failing to file with the registry, S.C.W. had given his irrevocable implied consent to the adoption, notwithstanding his filing two lawsuits demonstrating his strenuous objection to the adoption, would be an extreme case of elevating form over substance.

“ALAA Sanctions

“The putative father’s attorneys appeal the trial court’s award of attorney fees to the adoptive parents pursuant to the ALAA. Section 12-19-272 provides that a court may assess attorney fees against an attorney or a party that brings an action or claim ‘without substantial justification.’ Section 12-19-271(1) defines an action ‘without substantial justification’ as an action that is ‘frivolous, groundless in fact or in law, vexatious, or interposed for any improper purpose, including without limitation, to cause unnecessary delay or needless increase in the cost of litigation as determined by the court.’ The trial court, in order to award attorney fees, must make specific findings that the action was brought ‘without substantial justification.’ Pacific Enters. Oil Co. v. Howell Petroleum Corp., 614 So.2d 409 (Ala.1993).
“The trial court stated that the putative father’s contest to the adoption was made without ‘substantial justification.’ The court also stated that actions of the putative father and his attorneys ‘unnecessarily expanded these proceedings and caused unnecessary delay.’ The trial court also stated that the putative father’s attorneys and his parents illegally publicized the adoption contest as a means of subjecting the court to public pressure.
“As one could infer from my discussion and resolution of the conflicts be *852 tween the Putative Father Registry Act and the Alabama Adoption Code, I would necessarily conclude that the putative father’s actions were brought with substantial justification and did not unnecessarily delay the proceedings. In addition, our supreme court has stated:
“ ‘Also, we conclude that the legislature had no intention to chill attorney creativity in making good faith arguments for changes in the law. Trial courts should be exceedingly careful in making a “without substantial justification” finding, so as not to discourage attorneys from creatively arguing for change in the law based on rational, good faith argument.’
“Pacific Enters. Oil Co., 614 So.2d at 418. Therefore, I would reverse the sanctions imposed on P.D. and S.D.H.”
We agree, and we adopt Judge Craw-ley’s dissent. Therefore, we reverse the judgment of the Court of Civil Appeals and remand the cause for that court to, in turn, remand the cause to the trial court with instructions to vacate the judgment of adoption, to hold a contested hearing pursuant to § 26-10A-24, and to conduct any further necessary proceedings that are consistent with this opinion. In light of this conclusion, those further proceedings should include a reevaluation of the sanctions entered against the biological father’s attorneys.
REVERSED AND REMANDED WITH INSTRUCTIONS.
MOORE, C.J., and LYONS, SEE, and JOHNSTONE, JJ., concur.
HARWOOD, J., concurs specially.
HOUSTON, BROWN, WOODALL, and STUART, JJ., dissent.

. The Court of Civil Appeals also concluded that the biological father had not properly challenged the constitutionality of the Registry Act. We disagree. We have reviewed the record and the briefs filed by the biological father, and, although he may not have expressed his constitutional argument in the most artful of terms, we believe that the father’s constitutional challenge to the Registry Act was sufficiently raised before the juvenile court and the Court of Civil Appeals to allow us to consider it.