Rel: December 13, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

————————————

### SC-2024-0066

————————————

**John C. Brown**

**v.**

**State of Alabama ex rel. Deanna Ceasor, as informant**

**Appeal from Jefferson Circuit Court**
**(CV-23-901937)**

COOK, Justice

AFFIRMED. NO OPINION.

See Rules 53(a)(1) and (a)(2)(F), Ala. R. App. P.

Parker, C.J., and Wise, Sellers, Mendheim, and Stewart, JJ., concur.

Shaw, J., concurs specially, with opinion.

Cook, J., concurs specially, with opinion, which Bryan, J., joins.

Mitchell, J., dissents, with opinion.

SHAW, Justice (concurring specially).

I concur to affirm the trial court's judgment without an opinion, and I write specially to note the following.

The facts of this case are discussed in Justice Cook's special writing. As he notes, the legality of Municipal Ordinance No. 1154 of the City of Tarrant ("the ordinance"), which, among other things, purports to create the office of a "city manager" for that city, was challenged in the action below.

Generally speaking, I see nothing restricting the city council of a municipality from hiring an administrator or employee simply called a "city manager" and assigning that person certain duties and responsibilities. However, that person cannot be assigned duties and responsibilities that, among other things, are forbidden by law or that are vested by law in other persons, including the municipality's mayor. See generally § 11-43-43, Ala. Code 1975 ("All legislative powers and other powers granted to cities and towns shall be exercised by the council, except those powers conferred on some officers by law or ordinance."); § 11-43-47, Ala. Code 1975 ("The council shall prescribe by an ordinance the powers to be exercised and the duties to be performed by the officers

appointed or elected so far as such duties and powers are not prescribed by law."); and § 11-43-81, Ala. Code 1975 ("The mayor shall be the chief executive officer, and shall have general supervision and control over all other officers and the affairs of the city or town ….").

I note that § 2(e) of the ordinance states, in part: "The City Manager shall further exercise authority over and it shall be his or her duty: … (13) To perform all duties and responsibilities which have been previously assigned to the Mayor by ordinance or resolution of the City Council …." Although that section of the ordinance was viewed critically in the trial court and on appeal, unless the law otherwise requires, a city council clearly has the authority to repeal prior ordinances and resolutions.

COOK, Justice (concurring specially).

John C. Brown appeals from the Jefferson Circuit Court's judgment in favor of Deanna Ceasor. In May 2023, the City Council for the City of Tarrant adopted Municipal Ordinance No. 1154 ("the ordinance") pursuant to § 11-43-20, Ala. Code 1975 ("the City Manager statute"). The ordinance created the Office of City Manager. It also stripped the Mayor of Tarrant, Wayman Newton, of virtually all of his powers and reassigned those powers to the city manager.

In June 2023, the city council passed a resolution appointing Brown to the newly created Office of City Manager. Following Brown's appointment, Ceasor commenced a quo warranto action against Brown in the trial court, alleging that he was unlawfully holding the Office of City Manager because the city council lacked the legal authority to pass an ordinance that delegated the powers of the mayor to the city manager. The trial court entered a judgment declaring the ordinance void. Brown appealed. We now affirm.

I concur fully in this Court's decision to affirm the trial court's judgment. I write specially, however, to explain why the city council could not enact an ordinance that amounted to a change in Tarrant's form of

5

government without a referendum and to provide municipalities with guidance regarding the proper procedures for adopting a council-manager form of government.

Background

Tarrant is a Class 7 municipality that operates under a mayor-council form of government. The governing body consists of a mayor who is elected at-large and five city-council members who are elected by district. The authority and power of both the mayor and city council are dictated by certain provisions of the Alabama Code. Specifically, the mayor-council statutory scheme vests executive power in the mayor and legislative power in the city council. See § 11-43-81, Ala. Code 1975 ("The mayor shall be the chief executive officer, and shall have general supervision and control over all other officers and the affairs of the city or town ...."); § 11-43-43, Ala. Code 1975 ("All legislative powers and other powers granted to cities and towns shall be exercised by the council, except those powers conferred on some officers by law or ordinance.").

On May 1, 2023, at a meeting of the city council, Councilor Tracie Threadford introduced an ordinance to appoint a city manager for Tarrant. As relevant here, the ordinance provided as follows:

"**WHEREAS**, the current Mayor of the City of Tarrant has continuously and consistently failed to keep the City Council informed of the financial condition of the City; and

"**WHEREAS**, the current Mayor of the City of Tarrant has continuously and consistently failed to make timely payments of the financial obligations of the City of Tarrant; and

"**WHEREAS**, the City Council has no confidence in the current Mayor of the City of Tarrant and desires to appoint a City Manager; and

"**WHEREAS**, the City Council has the authority, pursuant to Article 2 of Title 11, Chapter 43, § 11-43-20 et seq., Code of Alabama, 1975 to employ a City Manager with the authority, duties, and liabilities described in said Article, whose term of office and compensation shall be as prescribed in said Article; and

"**NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF TARRANT AS FOLLOWS:**

"**SECTION 1. APPOINTMENT OF CITY MANAGER.**

"The previsions [sic] of Article 2 of Title 11, Chapter 43, § 11-43-20 [et] seq., Code of Alabama, 1975 are hereby invoked by the passage of this Ordinance and said provisions shall be exercised. The City Council shall appoint a City Manager for the City of Tarrant with all of the duties and powers set forth in this Ordinance, the laws of the State of Alabama, and all current subsequent ordinances of the City of Tarrant. The appointment of a City Manager shall be made by resolution duly adopted by the [C]ity [C]ouncil, and the City Manager shall assume as provided by state law.

"**SECTION 2. COMPENSATION; POWERS AND DUTIES; BOND; TERM OF OFFICE, AND REMOVAL.**

"The City Manager shall have the authority and be charged with the duties, liabilities, and penalties and shall hold office and receive compensation as set for the [sic] in this section as follows[:]

"(a) <u>The City Manager shall be the administrative head of the municipal government of the City of Tarrant</u>.

"(b) The City Manager shall receive compensation as determined by the City Council per year and shall be payable in twelve (12) monthly installments from the City treasury.

"(c) During the absence or disability of the City Manager the City Council shall designate a properly qualified person to perform the duties of the office of City Manager.

"(d) The City Manager must devote all of his or her working time and attention to the affairs of the City of Tarrant and be responsible to the City Council for the efficient administration of all affairs of the City over which he or she has jurisdiction.

"(e) The City Manager shall further exercise authority over and it shall be his or her duty:

"(1) To see that all laws and orders are enforced;

"(2) <u>To appoint and employ all necessary employees of the City of Tarrant</u> provided that the positions of Chief of Police, Chief of the Fire Department, Superintendent of Utilities; City Attorney, Municipal

Court Prosecutor, Municipal Court Judge, Public Defender, and all other appointments designated by law shall be filled by the City Council;

"(3) To discipline employees supervised by him or her without the consent of the Mayor or City Council and without assigning any reason thereof therefore subject to any civil service regulation provided that nothing in this section shall operate or confer upon the City Manager supervision and control over the municipal Board of Education or municipal schools, utilities operated by the City or its police or fire department other than the authority to engage in conversation [the] employees of the police and fire departments and utilities operated by the City;

"(4) To attend all meetings of the City Council with a right to participate in any discussions, but having no vote. The City Manager shall be entitled to notice of all special meetings;

"(5) To recommend to the City Council for adoption such measures as he or she may deem necessary of [sic] expedient;

"(6) To see that all terms and conditions that favor the City of Tarrant or its inhabitants in any public utility franchise [are] faithfully kept and performed and upon the knowledge of any violation thereof to call the same to attention of the City Attorney, whose

duty it shall be forthwith take such steps that are necessary to protect the City and enforce the same;

"(7) To make and execute all lawful contracts on behalf of the City regarding matters within his or her jurisdiction except when otherwise prohibited, and that any contract, purchase or obligation involving more than $10,000 must be approved by the City Council unless Council specifically limits the amount of this authority;

"(8) To keep the City Council at all times fully advised as to the financial condition of the needs of the City;

"(9) To make a full written report to the City Council on the first of each month showing the operational expenditures of each department of the City government for the preceding month;

"(10) To fix all salaries and compensation of City employees lawfully employes [sic] by him or her subject to the rules and regulations of any civil service system and approval of the City Council;

"(11) To perform the duties of the City Clerk or, if applicable, the City Treasurer without additional compensation and when so acting he or she shall be charged with all of the duties, powers, responsibilities and penalties of the City Clerk or Treasurer

when so acting in his or her name as City Manager;

"(12) To be the purchasing agent for the City by whom all of the purchases of and supplies for departments under his or her control as well as those for the fire and police departments and utilities operated by the City shall be made and he or she shall approve all vouchers and payments of such purchases provided that all purchases involving the expenditure of more than $1000 in one transaction or for one purpose shall first be approved by the City Council;

"(13) To perform all duties and responsibilities which have been previously assigned to the Mayor by ordinance or resolution of the City Council; and

"(14) To perform such other duties as may be prescribed by law or by ordinance or resolution of the City Council."

(Capitalization and bold typeface in original; other emphasis added.)

At the May 1, 2023, meeting, Mayor Newton argued that the ordinance effectively changed Tarrant's form of government from a mayor-council form of government to a council-manager form of government. Mayor Newton insisted that this change could not be made

11

by a simple majority vote of the city council. Despite Mayor Newton's objections, the ordinance was passed and adopted by the city council at a special meeting held on May 3, 2023. Mayor Newton, who challenged the ordinance as illegal, entered the sole "no" vote.

On June 5, 2023, the city council passed a resolution appointing Brown to the newly created position of city manager. Mayor Newton objected to the resolution as invalid -- emphasizing that the ordinance that created the Office of City Manager effectively replaced the mayor-council form of government with a council-manager form of government by reassigning most of the mayor's powers to the new city manager. Thus, he argued, the ordinance failed to comply with the process prescribed by § 11-43A-1 et seq., Ala. Code 1975 ("the Council-Manager act"), which authorizes a municipality's change to a council-manager form of government only through the use of a petition signed by a certain percentage of qualified electors followed by an election by the citizens of the municipality. Again, the resolution passed -- with only Mayor Newton voting "no."

The following day, Ceasor, who was then a Tarrant resident and a supporter of Mayor Newton, filed her complaint for a writ of quo warranto

12

in the trial court, alleging that Brown was unlawfully holding the Office of City Manager.

In the trial court, Brown relied on the provisions of the ordinance to defend his appointment. He further pointed out that the City Manager statute states:

> "All municipalities in the State of Alabama, whether now or hereafter operating under a municipal government consisting of a mayor and aldermen or of a commission, are hereby authorized at their discretion to employ a city manager with the authority, duties, and liabilities described in this article [i.e. Title 11, Chapter 43, Art. 2, Ala. Code 1975], whose term of office and compensation shall be as prescribed in this article.
>
> "The authority given under this article to employ a city manager and to invoke the provisions hereof shall be exercised by the passage of an ordinance or resolution by the governing body of the municipality so desiring to employ a city manager, which ordinance or resolution shall set a date not less than 30 nor more than 60 days following the date of its passage upon which the city manager shall assume his office."

§ 11-43-20. Therefore, Brown argued that the City Manager statute authorized the city council to enact the ordinance that created the Office of City Manager and that he had been properly appointed to that position.

On January 8, 2024, the trial court entered a judgment in favor of Ceasor. As relevant here, the trial court's judgment stated as follows:

> "Based upon the Court's review of the written

13

submissions of the Parties, the stipulation of the Parties that there were no disputes as to the occurrence of the material facts in this matter, and extensive oral argument by counsel, the Court FINDS as follows:

"1. There are no genuine issues of material fact.

"2. The City Council of Tarrant City, Alabama may, pursuant to Ala. Code § 11-43-20, enact an ordinance creating the position of City Manager for Tarrant City without changing its form of government. However, any such ordinance must comport with Alabama statutory law, including, specifically, Ala. Code § 11-43-81, which sets out the rights, duties, responsibilities and powers of the mayor of a Class 7 municipality.

"3. The ordinance passed by the City Council of Tarrant City, titled 'ORDINANCE NO. 1154 AN ORDINANCE TO APPOINT A CITY MANAGER FOR THE CITY OF TARRANT,' conflicts with Ala. Code § 11-43-81. Specifically, Section 2, subpart (e)(13) unambiguously purports to strip the mayor of all or virtually all of his rights, duties responsibilities and powers.

"4. If the subject ordinance was not intended to change the form of government of Tarrant City to a Council-City Manager form of government, then the ordinance impermissibly purports to strip the mayor of his rights, duties, responsibilities and powers.

"5. If the subject ordinance was intended to change the form of government of Tarrant City to a Council-City Manager form of government, then the ordinance impermissibly attempted to do so without holding a referendum putting the matter to a vote of the citizens of Tarrant City as required by Alabama law.

"6. This Court has the authority to construe ambiguous

city ordinances using the usual, customary and ordinary rules of statutory construction. However, if a term is unambiguous, the Court cannot 're-write' the ordinance to remove objectionable language. Since the terms of the subject ordinance unambiguously and impermissibly purport to strip the mayor of his rights, duties, responsibilities and powers, the ordinance is void ab initio.

"Accordingly, JUDGMENT is hereby entered in favor of Plaintiff STATE OF ALABAMA, Ex Rel. DEANNA CEASOR, Informant, and against Defendant JOHN C. BROWN and the Court hereby ORDERS and DECREES as follows

"1. ORDINANCE NO. 1154 AN ORDINANCE TO APPOINT A CITY MANAGER FOR THE CITY OF TARRANT passed by the City Council of Tarrant City on May 3, 2023, is void ab initio and was and is of no legal effect.

"2. Defendant JOHN C. BROWN does not rightfully hold the office of city manager of Tarrant City.

"3. The third ground of the DEFENDANT JOHN BROWN'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT is OVERRULED and DENIED."

(Capitalization in original.)

On January 10, 2024, Brown filed a motion to alter, amend, or vacate the trial court's judgment. The trial court denied that motion. Brown appealed the trial court's judgment to this Court.

Discussion

15

At the outset, it is important to state what this case is about -- namely, whether the city council could bypass the requirements of the Council-Manager act by adopting an ordinance pursuant to the City Manager statute that transferred virtually all the powers of the mayor to the new city manager. An examination of the relevant statutory text and history makes clear that the answer to this question is "no" and that city councils seeking to transfer the executive and administrative powers of an elected mayor to a city manager must comply with the process prescribed by the Council-Manager act.

As background, in 1936, the Legislature enacted the City Manager statute, which authorized municipalities to hire a city manager. In 1982, the Legislature passed the Council-Manager act. The Council-Manager act sets forth the framework for adopting a council-manager form of government.

As relevant here, the Council-Manager act provides that a change to a council-manager form of government requires (1) the submission of petition "signed by 10 percent or more of the number of qualified voters who voted in the last general municipal election," § 11-43A-2, Ala. Code 1975, (2) a probate court's certification of the sufficiency of that petition,

see § 11-43A-1.1, Ala. Code 1975, and (3) an election on the adoption of a council-manager form of government, see § 11-43A-3, Ala. Code 1975. In 2018, the Legislature passed an amendment to the Council-Manager act that removed the referendum requirement. That amendment, however, was quickly repealed, and the Legislature reinstated the referendum requirement in 2019.

Importantly, § 11-43A-52, Ala. Code 1975, which is a part of the Council-Manager act, provides that "all such laws relating to the exercise of powers, functions, and duties by the commission or mayor-council or some other form of government <u>shall be superseded</u> to the extent that the same are inconsistent with the provisions of [the Council-Manager act]." (Emphasis added.)

The plain language and legislative history of the Council-Manager act make clear (1) that Legislature intended for the adoption of a council-manager form of government to require an election on the question and (2) that the requirements of the Council-Manager act supersede any inconsistent provision in the City Manager statute. From this, it follows that any provisions under the City Manager statute that authorize adopting a council-manager form of government without submitting a

17

petition or holding an election are "inconsistent" with the process prescribed by the Council-Manager act and are therefore superseded by the requirements set forth in the Council-Manager act. Thus, municipalities seeking to either expressly or effectively change from a mayor-council form of government to a council-manager form of government must comply with the Council-Manager act's petition and referendum requirements.[1]

---

[1]There are other statutory-construction tools that, although not needed to resolve this question, would also appear to support this same conclusion. For instance, in the event of a conflict, a statute enacted later in time generally governs over an earlier statute. See Union Cent. Life Ins. Co. v. State ex rel. Whetstone, 226 Ala. 420, 423, 147 So. 187, 189 (1933) (explaining that "[i]f there is a conflict the last expression of the legislative will must control"). Here, the Council-Manager act was passed after the City-Manager statute. Further, specific provisions will normally govern over general provisions if there is a conflict. See Ex parte Jones Mfg. Co., 589 So. 2d 208, 211 (Ala. 1991) (explaining that, "[i]n the event of a conflict between two statutes, a specific statute relating to a specific subject is regarded as an exception to, and will prevail over, a general statute relating to a broad subject"). Here, the Council-Manager act is the subsequently enacted, more specific statutory scheme that prescribes what must be done in order for a municipality to adopt a council-manager form of government.

Finally, the ordinance purports to strip the mayor of the executive duties and powers that are expressly granted to him pursuant to § 11-43-81, Ala. Code 1975 ("The mayor shall be the chief executive officer, and shall have general supervision and control over all other officers and the affairs of the city or town …."). The construction urged by Brown would also appear to create a direct conflict between § 11-43-81 (allocating

In the present case, the ordinance did not merely authorize the appointment of a city manager. Rather, it stripped the mayor of all, or virtually all, of his powers and transferred those powers to the city manager -- effectively adopting a council-manager form of government. Because the Council-Manager act supersedes all inconsistent laws relating to the powers of a city council, see § 11-43A-52, the city council lacked the authority to pass an ordinance adopting a council-manager form of government without first satisfying the petition and referendum requirements set forth in §§ 11-43A-2 to -3. Those requirements were not met, and the trial court therefore properly found that Brown was unlawfully holding the Office of City Manager.

---

executive powers to the mayor) and the City Manager statute (authorizing the hiring of a city manager with the same executive powers as the mayor). In such a situation, we would be called upon to harmonize those provisions and leave a field of operation for both statutes (that is, interpret the statutes so that neither would be meaningless). See Ex parte S.C.W., 826 So. 2d 844, 850 (Ala. 2001) (quoting S.C.W. v. C.B., 826 So. 2d 825, 842 (Ala. Civ. App. 2001) (Crawley, J. concurring in part and dissenting in part) (explaining that, "'[u]nless two statutes are in irreconcilable conflict, it is the court's duty to regard each as effective and to arrive at a construction that will harmonize the seeming conflict and give each statute a reasonable field of operation'"). Applying that canon of construction, it would be logical for us to interpret the City Manager statute as having a limited field of operation when the applicable procedures set forth in the Council-Manager act have been followed.

Bryan, J., concurs.

MITCHELL, Justice (dissenting).

In my view, this case is moot. Donna Ceasor had standing to bring her quo warranto action originally. But while the case was pending, she moved from Tarrant, and she has not returned. Thus, because she is neither a resident nor a qualified elector of Tarrant, she no longer has a live, alleged injury -- and the Court's decision on the merits today does not affect <u>her</u> rights. For that reason, I believe we must dismiss her appeal.

Quo warranto actions, by their very nature, are "public law cases." Indeed, our Court has stated that "[p]ublic-law actions involve 'constitutional or other challenges to the actions of officials or administrative agencies.'" <u>Munza v. Ivey</u>, 334 So. 3d 211, 216 (Ala. 2021) (quoting <u>Ex parte BAC Home Loans Servicing, LP</u>, 159 So. 3d 31, 34 (Ala. 2013)). And while private individuals may file for a writ for quo warranto against State officials, they do so on behalf of the State.

In public-law cases such as this, an Alabama court has subject-matter jurisdiction only if the plaintiff has standing to bring the action. <u>See</u> <u>Ex parte BAC Home Loans</u>, 159 So. 3d at 44. To determine whether a plaintiff has standing, our courts employ the test set forth by the United

21

States Supreme Court in <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555 (1992).[2]  <u>Ex parte Aull</u>, 149 So. 3d 582 (Ala. 2014).  Among other requirements, <u>Lujan</u> requires plaintiffs to demonstrate "an actual, concrete and particularized 'injury in fact' -- 'an invasion of a legally protected interest.'"  <u>Alabama Alcoholic Beverage Control Bd. v. Henri-Duval Winery, L.L.C.</u>, 890 So. 2d 70, 74 (Ala. 2003) (quoting <u>Lujan</u>, 504 U.S. at 560).  An injury in fact, in turn, must be "'(a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"'"  <u>Ex parte Alabama Educ. Television Comm'n</u>, 151 So. 3d 283, 287 (Ala. 2013) (plurality opinion) (quoting <u>Lujan</u>, 504 U.S. at 560).

Our sister states similarly require a plaintiff in a quo warranto action to show a particularized injury.  <u>See, e.g.</u>, <u>Minnesota Voters Alliance v. Hunt</u>, 10 N.W.3d 163 (Minn. 2024) (holding that individuals

_____

[2]Whether we <u>should</u> follow <u>Lujan</u> is a different question.  <u>See Hanes v. Merrill</u>, 384 So. 3d 616, 622 (Ala. 2023) (Mitchell, J., concurring specially) (questioning whether this Court should "reconsider … adoption of the federal standing test announced in <u>Lujan</u>," but recognizing that a party must first properly raise the issue); <u>see also</u> <u>id.</u> at 623 (Cook, J., concurring specially) (stating that "this Court should consider, in the right case, the proper standard for standing under the Alabama Constitution").

22

must have standing comparable to what is required in <u>Lujan</u> in order to bring a quo warranto action and rejecting "taxpayer standing" in such an action); <u>Spykerman v. Levy</u>, 491 Pa. 470, 485, 421 A. 2d 641, 649 (1980) ("A private person may not bring a quo warranto action to redress a public wrong when he has no individual grievance."); <u>Phi Iota Alpha Fraternity, Inc. v. Schedler</u>, 182 So. 3d 998, 1003 (La. Ct. App. 2015) ("[S]tanding to bring a writ of quo warranto is not limited to a member, shareholder, director, or officer of the corporation, but is granted to a plaintiff having a real and actual interest in the action."); <u>Henderson v. Miller</u>, 228 Ill. App. 3d 260, 267, 592 N.E.2d 570, 574, 170 Ill. Dec. 134, 138 (1992) ("[To bring a quo warranto action] an individual must demonstrate that he has standing by showing that he has a private interest which is directly, substantially and adversely affected by the challenged act, which is either then occurring or certain to occur, and which is distinct from the interests of the general public, even though some members of the public might be affected in the same manner.").

Ceasor initiated this action by filing a complaint challenging the Tarrant City Council's authority to adopt an ordinance that (1) created the Office of City Manager and (2) awarded the new city manager many

of the powers previously assigned to Tarrant's mayor. In doing so, she alleged that the city council lacked the legal authority to appoint John C. Brown as city manager. At the moment she filed the complaint, she resided in Tarrant, and she had voted for the mayor in the previous election. Thus, at the determinative time, she sufficiently alleged that she had suffered a particularized injury and had standing to bring a quo warranto action under § 6-6-591(a)-(b), Ala. Code 1975.

But at some point during these proceedings, Ceasor moved out of Tarrant, which meant she no longer suffered an injury and her case became moot. Moot cases are nonjusticiable, and our courts do not retain jurisdiction over them. See Rogers v. Burch Corp., 313 So. 3d 555, 560 (Ala. 2020). Whether a case is moot is determined by "'"""whether the court's action on the merits would affect the rights of the parties."'""" Ex parte Merrill, 264 So. 3d 855, 861 (Ala. 2018) (citations omitted). And cases are moot if "'"'"at any stage there ceases to be an actual controversy between the parties."'""" Id. (citations omitted). Here, Ceasor moved out of Tarrant, is no longer a qualified elector or resident, and has no stake in the outcome of this case. Thus, whether we affirm or

24

reverse the trial court's judgment, Tarrant's form of government will not "affect the rights of [Ceasor]" in any way. Id.

Nor would the quo warranto statutes keep her action alive if the State intervened in the suit. True, § 6-6-591(b) provides that "any person" may proffer information leading to a quo warranto action. But we must still ask "'"'"whether the court's action on the merits would affect the rights of the parties,"'"'" Ex parte Merrill, 264 So. 3d at 861 (citations omitted), and the quo warranto statutes require that a plaintiff be joined with the State. § 6-6-595, Ala. Code 1975 ("Whenever an action is commenced under the provisions of [the quo warranto statutes] on the information of any person, his name must be joined as plaintiff with the [S]tate."). Even if an individual plaintiff dies, leaving only the State on the plaintiffs' side, the quo warranto statutes require another person to be substituted; otherwise, "the action shall be dismissed." § 6-6-596, Ala. Code 1975. In my view, then, quo warranto actions require a plaintiff with a live controversy to remain in the suit such that the State may not be the only "plaintiff." Said differently, neither the phrase "any person" nor the fact that the State enters the suit abrogates this Court's traditional standing and mootness principles as to the plaintiff.

25

Finally, Ceasor contends that the appointment of the city manager nullified her 2020 vote for Tarrant's mayor. But she cites no cases involving individual vote nullification, only cases involving legislative vote nullification. See Morrow v. Bentley, 261 So. 3d 278 (Ala. 2017) (discussing legislator's suing in his official capacity after a legislative vote was allegedly nullified); see also Cleburne Cnty. Bd. of Educ. v. Payne, 518 So. 2d 49 (Ala. 1987) (finding trustees of an elementary school had standing to challenge the actions of the county board of education when the board had nullified decisions of the trustees). Nor can I find any cases holding that purported individual "vote nullification" would continue unabated now that Ceasor no longer resides or is a qualified elector in Tarrant. And surely this is not the law. Otherwise, plaintiffs would be free to sue public officials on claims of vote nullification even after they have moved out of a town, city, county, or even the state.

In summary, Ceasor no longer has a live injury, and I believe this quo warranto action is moot. Consequently, we should dismiss this appeal and instruct the trial court to dismiss the action. See Underwood v. Alabama State Bd. of Educ., 39 So. 3d 120, 127-28 (Ala. 2009) ("'A court without subject-matter jurisdiction "'may take no action other than to

exercise its power to dismiss the action ....  Any other action … is null and void."'"' (citations omitted)).  I respectfully dissent.