STUART, Justice.
Alfa Mutual Insurance Company (“Alfa”) and William Koch (hereinafter referred to collectively as “the Alfa defendants”) appeal an order of the Geneva Circuit Court granting in part Corey Cul-verhouse’s motion to vacate the summary judgment entered in favor of the Alfa defendants in Culverhouse’s action asserting that Alfa had wrongfully refused to pay him benefits he was entitled to under a homeowner’s insurance policy. We affirm.
I.
In late 2005 or early 2006, Culverhouse, a self-employed general contractor, began constructing a house for himself on a five-acre lot in Hartford. Culverhouse initially financed the construction of the house himself; however, he eventually sought financing from a mortgage company, and, at that same time, he obtained from Alfa a policy insuring the house during the remainder of the construction process and after construction was completed. Culverhouse does not remember many of the details surrounding his purchase of the policy, but it appears that Koch was the agent responsible for selling Culverhouse the policy. Culverhouse acknowledges receiving a copy of the policy after he purchased it, and it appears that he subsequently renewed the policy after moving into the house when construction was finished sometime in 2007 or 2008. For the one-year period beginning June 19, 2009, the policy offered a total of $975,700 in coverage — $464,600 for the structure, $325,200 for the personal property contained in the *1073 house, $46,500 for other structures on the property, and $139,400 for loss of use.
On July 3, 2009, a minor fire damaged the kitchen of the house. Culverhouse submitted a claim to Alfa, which paid for a remediation company to clean and repair the smoke damage caused by the fire. During this process, Culverhouse moved out of the house and into a barn on his property. After about two weeks of living in the barn, Culverhouse moved into a house he was constructing for eventual sale across the road from his house.
In the early morning of July 30, 2009, Culverhouse was awakened by his father, who had been alerted by a newspaper-delivery person and had driven to Culver-house’s house, and told that his house across the road was again on fire. This time, however, the fire could not be extinguished, and the house, its contents, and, according to the parties, the adjacent swimming pool were completely destroyed. Culverhouse promptly informed Alfa of the fire, and Alfa thereafter began an investigation into the cause. Ultimately, however, the investigator retained by Alfa was unable to establish how the fire began; its cause remains unknown.
On September 21, 2009, Culverhouse submitted a proof of loss to Alfa, claiming a total loss of $934,450 related to the fire. Alfa, however, immediately questioned the claim because Culverhouse had not submitted with his claim an inventory of the contents of the house and supporting documentation, and he had not submitted any evidence supporting the large claim he had submitted for loss of use in the two-month period since the fire or evidence indicating that any other structure besides the house and swimming pool had been destroyed.[1] Moreover, using its standard procedures, Alfa had determined that the replacement value of Culverhouse’s house was $432,-268 — a sum within the $464,600 of coverage Culverhouse had on the house itself— and Culverhouse had submitted no contradictory estimates.
Culverhouse, through his attorney, sent Alfa itemized lists of the alleged contents of the house at the time of the fire; however, deeming those lists to be insufficiently specific and lacking in supporting documentation, Alfa, on November 6, 2009, notified Culverhouse that it was invoking its right under the policy to examine him under oath regarding his claim. On January 18, 2010, Culverhouse sat for the examination. During the course of the examination, Culverhouse admitted that some of the information he had submitted to Alfa was inaccurate, and he essentially acknowledged that he had just invented some values and guessed at others after becoming “frustrated and aggravated” with the claim process. Eventually Cul-verhouse refused to answer any more questions and left the examination.
On February 2, 2010, Culverhouse returned to finish the examination. Again, Culverhouse acknowledged that the list of contents he had submitted was inaccurate, and he was further unable to explain how he had arrived at the values he placed on many of the items on the list. Following the conclusion of that examination, Culver-house submitted additional itemized lists supporting his claim for contents of the house that were lost in the fire. As an example of contents included, that documentation included a claim that he had lost over 400 pairs of underwear and over 150 undershirts in the fire. Alfa was still not satisfied with the submitted information, *1074 deeming it to lack sufficient specificity and support documentation.
On March 24, 2010, Culverhouse submitted an estimate from his chosen builder stating that it would cost $464,154 to rebuild the house, and, on March 26, 2010, Culverhouse by letter requested that Alfa release the insurance proceeds he was due; Alfa responded by offering to settle Cul-verhouse’s claim for $458,750. On April 2, 2010, Culverhouse rejected Alfa’s offer, stating that it was “unacceptable and in bad faith” and demanding that Alfa pay the limits of the policy ($975,700). On April 12, 2010, Culverhouse reiterated his demand that Alfa pay the policy limits. On April 16, 2010, Alfa advised Culver-house that it would not meet his request to pay the policy limits because his “demand for policy limits [did] not make sense as there [were] various coverage[s] under the policy that [were] not applicable.” Alfa further offered to settle Culverhouse’s claim by paying $464,600 to rebuild the house and an additional $100,000 to settle all other claims.
Culverhouse thereafter advised Alfa that he would submit a response to its offer; however, on July 8, 2010, Culverhouse instead filed the instant action, alleging that Alfa had willfully refused to pay him the insurance proceeds he was due under the policy and asserting claims of breach of contract, negligence, the tort of outrage, fraud, and bad-faith failure to pay an insurance claim. Culverhouse claimed $975,700 in compensatory damages and $2,000,000 in punitive damages, plus an additional sum for attorney fees and costs. The Alfa defendants thereafter filed an answer denying Culverhouse’s claims and moving to dismiss the complaint. That motion to dismiss was granted in part, and the breach-of-contract claim against Koch was dismissed along with the entire negligence claim.
At a subsequent deposition, Culverhouse acknowledged that he had given Alfa false information in the past regarding his claim, explaining that he had been upset and had wanted to “throw the book” at Alfa, but he estimated at that time that approximately $200,000 in personal property was destroyed in the fire, plus or minus $50,000. He also testified that he had moved into another house he owned after the fire and that his only loss-of-use costs associated with that move were $500 to purchase blinds for the house into which he had moved. With regard to the “other structures” coverage of his policy, it is also undisputed that Culverhouse had only a swimming pool, and he submitted an estimate of $22,000 to rebuild that pool. Regardless of these facts, Culverhouse claimed at his deposition that he was entitled to the entire policy limits — $975,700— because he had paid his premiums.
On November 6, 2012, the Alfa defendants filed a counterclaim seeking a judgment declaring that Culverhouse had voided his insurance by making misrepresentations during both the application process and the claims process. On November 20, 2012, the Alfa defendants moved for a summary judgment on all of Culverhouse’s remaining claims, and Cul-verhouse thereafter filed a response moving to dismiss the counterclaim and opposing the summary-judgment motion. After various delays, a hearing on the summary-judgment motion was held on March 27, 2013, and on April 2, 2013, the trial court entered an order granting the' Alfa defendants’ motion and dismissing each of Culverhouse’s claims; the trial court also dismissed the Alfa defendants’ counterclaim as moot.
Culverhouse thereafter retained a new attorney and, on May 2, 2013, moved the trial court to alter, amend, or vacate its April 2, 2013, judgment pursuant to Rule *1075 59(e), Ala. R. Civ. P. That motion raised some arguments that Culverhouse acknowledged he had not articulated clearly in his previous response to the Alfa defendants’ motion for a summary judgment, and, on that basis, the Alfa defendants moved to strike Culverhouse’s motion, while also filing a response opposing it on its merits. On May 30, 2013, the trial court granted Culverhouse’s motion in part and amended its April 2, 2013, summary-judgment order so as to exclude Culver-house’s breach-of-contract claim from the judgment, leaving it as the only remaining claim in the case.[2] The Alfa defendants thereafter moved the trial court to certify its judgment for an immediate appeal pursuant to Rule 5, Ala. R.App. P., and, on June 13, 2013, the trial court granted that request. On June 27, 2013, the Alfa defendants petitioned this court for permission to appeal, and, on July 31, 2013, we granted that request.
II.
The Alfa defendants’ argument on appeal does not relate to the merits of Cul-verhouse’s breach-of-contract claim. Rather, it concerns only whether the trial court acted properly by amending its summary-judgment order to resurrect that claim in response to Culverhouse’s motion to alter, amend, or vacate the judgment pursuant to Rule 59(e). We have stated that “ ‘[wjhether to grant relief under Rule 59(e), Ala. R. Civ. P., is within the trial court’s discretion.’ ” Schramm v. Spottswood, 109 So.3d 154, 160 (Ala.2012) (quoting Bradley v. Town of Argo, 2 So.3d 819, 823 (Ala.2008)).
III.
The trial court identified and explained the issue of law before this Court as follows in its order granting Culverhouse’s Rule 59(e) motion:
“Motions to reconsider serve a limited purpose: ‘to correct manifest errors of law or fact or to present newly discovered evidence.’ Publishers Resource, Inc. v. Walker-Davis Publications, Inc., 762 F.2d 557, 561 (7th Cir.1985). Examples of manifest errors of law or fact include when ‘the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension.’ Quaker Alloy Casting Co. v. Gulfco Industries, Inc., 123 F.R.D. 282, 288 (N.D.Ill.1988). Reconsideration motions may also be entertained when ‘a controlling or significant change in the law or facts since the submission of the issue to the court’ has occurred. Id. Motions to reconsider are inappropriate for introducing evidence previously available or for tendering new legal theories. Bally Export Corp. v. Balicar, Ltd., 804 F.2d 398, 404 (7th Cir.1986) (‘Although the defendants attempted to raise the argument in their motion for reconsideration, a motion for reconsideration is an improper vehicle to introduce evidence previously available or to tender new legal issues.’). See also Hashwani v. Barbar, 822 F.2d 1038, 1041 (11th Cir.1987) (holding that a district court did not abuse its discretion by not considering arguments raised for the first time on a motion to amend a sum *1076 mary judgment order); American Home Assurance Co. v. Glenn Estess & Assocs., Inc., 768 F.2d 1237, 1239 (11th Cir.1985).
“[Culverhouse] cites the most recent [Court of] Civil Appeals case of Williams v. Valley View Health & Rehab., 64 So.3d 638, 641 (Ala.Civ.App.2010), for [his] argument that the court is within its discretion to consider any new legal arguments in [his] post-judgment motion. The [Alfa] defendants] argue[ ] that the trial court’s discretion to hear new .arguments in a postjudgment motion is limited to cases where the party articulated a justification for failing to timely raise the argument. [The Alfa] [d]efendant[s] allege[ ] this is a ‘procedural attempt to take a second bite at the apple.’ [Culverhouse] relies on the Williams case that does not go into the justification. In the Williams case the Court of Civil Appeals cited two Supreme Court decisions that do state there is to be a justification: Espinoza v. Rudolph, 46 So.3d 403, 416 (Ala.2010), and Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1369 (Ala.1988). In 2010, the Espinoza decision was made in March by the Supreme Court before the September decision of Williams by the Court of Civil Appeals. In December 2010, the Supreme Court denied certiorari in the Williams case. The procedural issue is whether justification is required. The court specifically asked this question in oral argument to [Culverhouse’s] counsel, whose response was that justification was not required. At no time in briefs or argument did [Culverhouse] offer a justification to the court. Since the Supreme Court declined to clarify this matter in December 2010, the Court believes at this time that justification is not an absolute requirement. Therefore, whether to allow new argument is in the discretion of the court and this court chooses in the interest of justice to allow [Culverhouse’s] new argument.”
Subsequently, in certifying its judgment for an immediate appeal, the trial court summarized the controlling question of law as follows:
“The controlling question of law is whether the trial court erred by granting a motion to alter, amend or vacate a summary judgment order based on new legal arguments not raised during the pendency of the summary judgment where the movant failed to offer any justification for his fáilure to previously make those arguments.”
We note that the issue before us — under what circumstances a trial court may consider an argument made for the first time in a postjudgment motion — was first considered by this Court in Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366 (Ala.1988). We stated then:
“The question of whether a new legal argument in a post-judgment motion is timely, is a question of first impression in this State. Other jurisdictions considering the question presented by this case have concluded that new legal arguments in a post-judgment motion are untimely. See Excavators & Erectors, Inc. v. Bullard Engineers, Inc., 489 F.2d 318, 320 (5th Cir.1973); Fehlhaber v. Fehlhaber, 681 F.2d 1015, 1030 (5th Cir.1982); Bally Export Corp. v. Balicar, Ltd., 804 F.2d 398, 404 (7th Cir.1986); Grumman Aircraft Eng’g Corp. v. Renegotiation Bd., 482 F.2d 710, 721 (D.C.Cir.1973), rev’d on other grounds, 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975).
“However, this Court recently decided a case analogous to the instant case involving the introduction of new evidence in a post-judgment motion.
*1077 Moore v. Glover, 501 So.2d 1187 (Ala.1986). In that case the Court held that when new — as opposed to newly discovered — evidence was first introduced in a post-judgment motion and no reason or justification was given for failing to present the evidence while the summary judgment motion was pending, the trial judge could not consider the new evidence. Moore, 501 So.2d at 1189. Nevertheless, if the plaintiff had ‘offered a proper explanation for his failure to offer that additional evidence in response to defendant’s motion for summary judgment, the trial court could have considered it in deciding whether to amend or vacate its entry of summary judgment.’ Id. (emphasis supplied). Furthermore, ‘[a]ny reasonable explanation of the party’s failure to offer evidence in response to a motion for summary judgment [would] suffice, but this does not mean that under the guise of a Rule 59(e) motion a party [could] belatedly submit available evidence in opposition to a motion for summary judgment.’ Moore, 501 So.2d at 1191 (Torbert, C.J., concurring specially).
“Given the analogous situations in Moore and the instant case, we conclude that a trial court has the discretion to consider a new legal argument in a post-judgment motion, but is not required to do so. We will reverse only if the trial court abuses that discretion.
“Based on the record before this Court on appeal, we conclude that there was no justification given by [the appellant] for failing to raise the argument prior to its post-judgment motion. Therefore, the trial court correctly refused to alter, amend, or vacate its order granting a summary judgment in favor of the [appellees].”
525 So.2d at 1369-70. Thus, the Green Tree Court noted that, under Moore v. Glover, 501 So.2d 1187 (Ala.1986), a party submitting new evidence for the first time in a postjudgment motion was required to justify why the evidence had not been previously submitted; otherwise the trial court lacked discretion to consider the new evidence. Relying on Moore, the Green Tree Court then concluded that a trial court may consider, that is, it has the discretion to consider, a new legal argument in a postjudgment motion but is not required to do so. The Green Tree Court did not specifically state that a party making a new legal argument in a post-judgment motion had to offer an explanation as to why that argument was not previously made in a timely manner but concluded that a trial court was justified in not considering such an argument if no such explanation was offered.
Post-Green Tree, the appellate courts of this State have at times noted a party’s failure to offer an explanation for a delay in making an argument when affirming a trial court’s decision not to consider the new argument and, at other times, the appellate courts have been silent on whether an explanation was offered or necessary. Compare Diamond v. Aronov, 621 So.2d 263, 266-67 (Ala.1993) (“Until he filed his Rule 60(b) motion, [the appellant] did not raise the [identified] issue ...; he offered no justification for failing to raise that issue earlier. A trial judge has the discretion to consider a new legal argument in a post-judgment motion, but is not required to do so. Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366 (Ala.1988). Absent an abuse of discretion, we will affirm the trial judge’s ruling in this regard. We cannot hold that the trial court abused its discretion in failing to consider that new argument; therefore, we affirm the denial of [the appellant’s] Rule 60(b) motion for relief from judgment.”), with Blackmon v. King Metals Co., 553 So.2d 105,106 (Ala.1989) (“On appeal, [the appel- *1078 Iant] argues that the judgment should be reversed [for two identified reasons]. These issues were first presented to the trial court after the ore tenus hearing on [the appellant’s] post-judgment motion. It is in the trial court’s discretion whether to deny or grant relief under Rules 59 and 60, and its decision will not be reversed on appeal absent an abuse of that discretion. ... The trial court did not abuse its discretion in rejecting [the appellant’s] new legal arguments made in his post-judgment motions. The judgment of the trial court is, therefore, affirmed.”).
However, although the appellate opinions considering this issue have not always been consistent in noting whether a new argument asserted in a postjudgment motion has been or needs to be accompanied by explanations for why it was not previously asserted, those opinions are consistent in one fashion — they all recognize the broad discretion of the trial court in making the decision whether to consider a new argument and they all ultimately defer to the decision the trial court has made. Indeed, the Alfa defendants acknowledge in their brief to this Court that none of the cases they cite involves an appellate court’s holding that a trial court exceeded its discretion by considering, or not considering, a new argument; rather, the cases they cite all involve an appellate court’s affirming a trial court’s judgment and holding that the trial court had not exceeded its discretion in deciding not to consider a new argument. Culverhouse, however, goes further and notes that not only has this Court never held that a trial court exceeded its discretion by considering a new argument presented in a post-judgment motion, but also, in Maxwell v. Dawkins, 974 So.2d 282, 286 (Ala.2006), this Court rejected an appellee’s argument to that effect:
“It is true that [the appellant] did not raise the issue of his father’s mental capacity to revoke his will until he filed his motion for reconsideration after the trial court had granted [the appellee’s] motion for a summary judgment. Accordingly, the trial court was under no obligation to consider the issue because it was not timely raised. However, although there was no requirement that it do so, the trial court nevertheless did have the discretion to consider the argument, and it appears to have done so. See Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1369 (Ala.1988) (‘[A] trial court has the discretion to consider a new legal argument in a post-judgment motion, but is not required to do so.’).”[3]
Based on Maxwell and the other cases cited by the parties, we think it clear that the discretion of the trial court to consider a new argument is paramount, and we see no reason to limit that discretion to those cases where the moving party has offered an on-the-record explanation for failing to make the belated argument earlier. The trial court is in the best position to determine whether the argument should be considered, and, in this case, the trial court specifically stated that it was “in the interest of justice” that Culverhouse’s belated argument be considered. Certainly, the trial court would have been within its discretion in refusing to consider the new argument, either because Culverhouse had not offered an explanation for failing to make the argument in a timely fashion or for some other reason; however, that is not the decision the trial court made. In recognition of the broad discretion afford *1079 ed a trial court on this issue, we defer to the decision that the trial court did make.
IV.
After the trial court amended its order entering a summary judgment in favor of the Alfa defendants on all of Culverhouse’s claim to exclude from summary judgment Culverhouse’s breaeh-of-contraet claim, the Alfa defendants appealed that decision to this Court, arguing that the trial court lacked discretion to consider a new argument made by Culverhouse in his post-judgment motion because Culverhouse did not offer any explanation for his failure to make that argument earlier. We hold that the trial court acted within its discretion in considering the argument and in amending the order, and its judgment is accordingly affirmed.
AFFIRMED.
MOORE, C.J., and BOLIN, PARKER, and WISE, JJ., concur.

. Culverhouse’s policy provided that ”[i]n ground swimming pools are considered other structures.”

. It is not clear whether the trial court intended to resurrect Culverhouse’s breach-of-contract claim with respect to Koch, who had successfully moved to dismiss that claim against him shortly after Culverhouse filed his complaint, or just Alfa. However, both Alfa and Koch thereafter moved for permission to appeal the trial court's judgment and both are parties to this appeal, although the Alfa defendants do note in their brief that the breach-of-contract claim against Koch was separately dismissed earlier in the litigation.

. This Court in Maxwell made no mention of whether the appellant had offered an explanation for his failure to raise this issue before the summary judgment was entered.