THOMPSON, Presiding Judge.
*989 On August 11, 2016, C.B.D. ("the stepfather") filed in the St. Clair Probate Court ("the probate court") a petition under the Alabama Adoption Code ("the AAC"), § 26-10A-1 et seq., Ala. Code 1975. In that petition, the stepfather sought to adopt a child born in April 2015 to his wife, A.L.D. ("the mother"), and, in support of that petition, he submitted, among other things, a consent to the adoption executed by the mother that expressed her desire that the stepfather adopt the child. Also in that petition, the stepfather identified R.W.S. as the putative father of the child. See § 26-10A-2(12), Ala. Code 1975 (defining the term "putative father" as "[t]he alleged or reputed father").
On August 15, 2016, the probate court entered an interlocutory order granting custody of the child to the stepfather, ordering that he provide for the child's support, and scheduling the adoption action for a final hearing. See § 26-10A-18, Ala. Code 1975.
On September 12, 2016, R.W.S., appearing pro se, filed an objection to the proposed adoption; R.W.S. asserted in that filing that he wanted to "establish his rights" as the father of the child. An attorney appeared on behalf of R.W.S. on December 1, 2016. The probate court received ore tenus evidence at a January 13, 2017, hearing.
On January 23, 2017, the probate court entered a judgment granting the stepfather's petition to adopt the child and noting that it had denied R.W.S.'s opposition to the proposed adoption. R.W.S., represented by new counsel, filed a postjudgment motion on February 3, 2017.[1] In support of that postjudgment motion, R.W.S. submitted copies of text messages and e-mails between the mother and him, as well as a January 27, 2017, affidavit executed by R.W.S.
On February 14, 2017, R.W.S. filed an amended motion in which, among other things, he sought relief pursuant to Rule 59(e), Ala. R. Civ. P., and Rule 60(b), Ala. R. Civ. P. R.W.S. submitted another affidavit, dated February 14, 2017, in support of that amended motion.
On February 17, 2017, the probate court entered an order concluding that R.W.S.'s February 3, 2017, postjudgment motion had been denied by operation of law and denying the February 14, 2017, amended motion. R.W.S. had appealed on February 16, 2017,[2] and this court assigned that appeal number 2160344. Later, on March 31, 2017, R.W.S. filed another notice of appeal, which was assigned appeal number 2160518. In his notice of appeal in appeal number 2160518, R.W.S. indicated that he was appealing the denial of that part of his February 14, 2016, amended motion in which he had sought relief pursuant to Rule 60(b).
R.W.S. moved to consolidate the two appeals, and this court originally denied that motion on May 31, 2017. Upon reconsideration, this court has granted the motion to consolidate the two appeals and has considered the two appeals together. We note that the briefs R.W.S. submitted in each of the two appeals are virtually identical. The difference in the two appellate briefs arises in appeal number 2150518, in which R.W.S. added a paragraph pertaining *990 to the standard for reviewing a denial of a Rule 60(b) motion.
R.W.S. argues in his appellate brief that the probate court erred in determining that his February 3, 2017, postjudgment motion was denied by operation of law in appeal number 2060344. The period for timely appealing an adoption judgment of a probate court is 14 days from the entry of the adoption judgment, unless that time is extended by the filing of a timely postjudgment motion.[3] § 26-10A-26(a), Ala. Code 1975. A postjudgment motion taken from a probate court's adoption judgment must be filed within 14 days of that judgment. Ex parte A.M.P., 997 So.2d 1008, 1013 n. 3 (Ala. 2008). Such a postjudgment motion is denied by operation of law if the probate court fails to rule on it within 14 days. Ex parte W.L.K., 175 So.3d 652, 656 n. 1 (Ala. Civ. App. 2015) (citing Ex parte A.M.P., supra).
R.W.S.'s February 3, 2017, postjudgment motion was timely filed within 14 days of the entry of the January 23, 2017, probate-court judgment approving the adoption. Ex parte A.M.P., supra ; Ex parte W.L.K., supra. The February 3, 2017, postjudgment motion could remain pending for 14 days, or until February 17, 2017, and would be deemed denied by operation of law in the absence of a ruling from the probate court. Id. The probate court entered an order on February 17, 2017, the last day on which it could rule on R.W.S.'s February 3, 2017, postjudgment motion, in which it incorrectly determined that the February 3, 2017, postjudgment motion had already been denied by operation of law. In that order, the probate court did not specifically rule on the February 3, 2017, postjudgment motion by denying it or granting it.[4] However, by failing to rule on the February 3, 2017, postjudgment motion by February 17, 2017, the probate court did allow the motion to be denied by operation of law. See Rule 59.1, Ala. Code 1975; § 26-10A-26(a), Ala. Code 1975; Ex parte A.M.P., 997 So.2d at 1013 n. 3; and note 5, infra. Thus, the probate court's incorrect conclusion in its February 17, 2017, order that the February 3, 2017, postjudgment motion had already been denied by operation of law was of no effect. In appeal number 2160344, R.W.S. timely appealed the adoption judgment and the denial of his February 3, 2017, postjudgment motion.[5]
Although neither party raises the issue, this court must also examine the timeliness of R.W.S.'s February 14, 2017, "amended" motion that purported, in its title, to seek relief pursuant to Rule 59(e), Ala. R. Civ. P., and Rule 60(b), Ala. R. Civ. P. See C & D Logging v. Mobley, 61 So.3d 1067, 1069 (Ala. Civ. App. 2009) (jurisdictional *991 issues, such as timeliness, are of such importance that this court may take notice of them ex mero motu ). The substance of a motion governs the manner in which it is to be construed. R.D.J. v. A.P.J., 142 So.3d 662, 666 n. 1 (Ala. Civ. App. 2013). In purporting to seek relief pursuant to Rule 60(b) in the February 14, 2017, amended motion, R.W.S. stated only that "[i]f this amended motion is deemed untimely pursuant to Rule 59, [R.W.S.] moves for relief under Rule 60(b)." R.W.S. made no argument in the February 14, 2017, amended motion pertaining to the various forms of relief from a judgment that are available under Rule 60(b). After examining the substance of the February 14, 2017, amended motion, we conclude that R.W.S. sought only relief available under Rule 59(e). Accordingly, we cannot conclude that any part of the February 14, 2017, amended motion could be argued to be a Rule 60(b) motion. See Burgess v. Burgess, 99 So.3d 1237, 1239 n. 1 (Ala. Civ. App. 2012) ("Although the husband indicated that his motion was filed pursuant to Rule 59, Ala. R. Civ. P., and Rule 60, Ala. R. Civ. P., we conclude that, because the motion did not seek relief pursuant to Rule 60(b), that motion was filed pursuant to Rule 59(e), Ala. R. Civ. P.").
Further, in his brief submitted to this court in appeal number 2160518, R.W.S., although he includes one paragraph setting forth the general standard of review of a Rule 60(b) motion, makes no argument pertaining to the denial of any part of the February 14, 2017, amended motion that might be argued to be made pursuant to Rule 60(b). It is neither the function nor the duty of this court to create an argument on behalf of an appellant or to perform an appellant's legal research. Swindle v. Swindle, 55 So.3d 1234, 1245 (Ala. Civ. App. 2010) (citing White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala. 2008) ). R.W.S. has failed to adequately address his apparent contention that the probate court erred in denying that part of his February 14, 2017, amended motion that he contended was made pursuant to Rule 60(b). Accordingly, we affirm the denial of that motion to the extent that it might be argued, as R.W.S. purportedly does in appeal number 2160518, to have requested relief under Rule 60(b).
As indicated above, R.W.S.'s February 14, 2017, amended motion was one made pursuant to Rule 59(e), Ala. R. Civ. P. R.D.J. v. A.P.J., supra ; Burgess v. Burgess, supra. Accordingly, for ease of reference, we refer to R.W.S.'s February 14, 2017, amended motion as an "amended postjudgment motion," i.e., a motion filed pursuant to Rule 59, for the remainder of this opinion. R.W.S.'s February 14, 2017, amended postjudgment motion, to the extent that it sought relief pursuant to Rule 59, was not filed within 14 days of the entry of the January 23, 2017, adoption judgment; therefore, under different facts, that motion might have been determined to be untimely. See Ex parte A.M.P., 997 So.2d at 1013 n. 3 (noting that a Rule 59 postjudgment motion taken from an adoption judgment must be filed within 14 days of the entry of that judgment). However, because the February 14, 2017, amended motion was filed while the original, and timely, February 3, 2017, postjudgment motion was still pending, the probate court had the discretion to consider that amended postjudgment motion. Alabama Farm Bureau Mut. Cas. Ins. Co. v. Boswell, 430 So.2d 426, 428 (Ala. 1983) ("[T]he trial court has discretion to allow an amendment to a motion for new trial to state an additional ground after thirty days from the final judgment, if the original motion was timely filed and is still before the court when the amendment is offered."); Slaton v. Slaton, 542 So.2d 1242, 1244 (Ala. Civ. App. 1989) (same); and *992 Kulakowski v. Cowart, 220 So.3d 304 (Ala. Civ. App. 2016) (same).
In this case, the probate court did not make an express finding regarding whether it had considered the February 14, 2017, amended postjudgment motion. However, the probate court did explicitly deny that motion in its February 17, 2017, order. Therefore, it appears that the probate court exercised its discretion and did consider the February 14, 2017, amended postjudgment motion, and, out of an abundance of caution, we address the issues raised in R.W.S.'s briefs on appeal accordingly. See, generally, Kulakowski v. Cowart, supra (discussing the trial court's discretion to allow an amendment to a postjudgment motion filed after the time allowed under Rule 59(e) but during the time the original postjudgment motion remained pending pursuant to Rule 59.1, Ala. R. Civ. P.).
R.W.S. contends that the probate court's adoption judgment should be reversed because, he says, the record does not contain a finding that R.W.S. consented or impliedly consented to the adoption. The AAC requires that a child's mother, a child's "presumed father," or, under certain circumstances, a child's putative father provide express or implied consent to a proposed adoption of the child. § 26-10A-7(a), Ala. Code 1975; see also § 26-10A-2(11) and (12), Ala. Code 1975 (defining the terms "presumed father" and "putative father" for the purposes of the AAC); and § 26-10A-9, Ala. Code 1975 (explaining the circumstances under which a court may determine that a parent has given implied consent to an adoption of his or her child). Such consent, whether express or implied, must be established by clear and convincing evidence. § 26-10A-7(a), Ala. Code 1975; J.D.S. v. J.W.L., 204 So.3d 386, 387 (Ala. Civ. App. 2016).
It is undisputed that R.W.S. did not expressly consent to the adoption. The prevailing argument in R.W.S.'s defense of the adoption action below and in his appellate briefs filed in this court is his contention that his actions do not indicate that he impliedly consented to the adoption. In the February 14, 2017, amended postjudgment motion, R.W.S., in addition to reiterating some of his earlier arguments, set forth different grounds for seeking to set aside the adoption judgment than those he had argued in his original, February 3, 2017, postjudgment motion. In his original, February 3, 2017, postjudgment motion, R.W.S. maintained that he was the child's "putative father" and that his consent to the adoption was required under the AAC. In his February 14, 2017, amended postjudgment motion, R.W.S. argued, among other things, that his consent to the adoption was required because, he said, he is the child's "presumed father" under the AAC.
The probate court, in its January 23, 2017, judgment, found that R.W.S. was a "putative father." A putative father's consent to an adoption is needed only if he is known to the court and "he complies with Section 26-10C-1 and he responds within 30 days to the notice he receives under Section 26-10A-17(a)(10) [of the AAC]." § 26-10A-7(a)(5) (emphasis added). R.W.S. was served with notice of the action by publication, and the record indicates that he responded to the adoption petition within 30 days of that notice; accordingly, it is not disputed that he "respond[ed] to the notice" required under the AAC. § 26-10A-7(a)(5). Section 26-10C-1, Ala. Code 1975, the other statute with which a putative father must comply in order for his consent to an adoption to be necessary under § 26-10A-7(a)(5), requires that a putative father file on the putative-father registry a notice of his intent to claim paternity of a child so that he can, among other things, preserve his ability to contest a proposed adoption of the *993 child. That section further provides, among other things, that
"[a]ny person who claims to be the natural father of a child and fails to file his notice of intent to claim paternity pursuant to [ § 26-10C-1 ](a) prior to or within 30 days of the birth of a child born out of wedlock, shall be deemed to have given an irrevocable consent in any adoption proceeding.
"This subsection shall be the exclusive procedure available for any person who claims to be the natural father of a child born out of wedlock ... to entitle that person to notice of and the opportunity to contest any adoption proceeding ...."
§ 26-10C-1(i).
As is discussed in more detail, infra, the record before this court contains no indication that R.W.S. properly filed a notice of intent to claim paternity of the child on the putative-father registry. In fact, R.W.S. alleged in his February 3, 2017, postjudgment motion that he had not filed a notice of intent to claim paternity on the putative-father registry. In his arguments asserted in his briefs on appeal, R.W.S. concedes that did not "timely" register as required by § 26-10C-1 and § 26-10A-7(a)(5) in order to be able to contest the adoption of the child as a putative father.
R.W.S. contends on appeal that the probate court was required to find in its January 23, 2017, adoption judgment that he had impliedly consented to the adoption through his conduct. However, as is explained above, the consent of a putative father to an adoption is not required if he does not respond to notice of the adoption action within 30 days and if he has not registered on the putative-father registry. The probate court, in its judgment, stated that it had considered R.W.S.'s contest to the adoption but had denied that contest. Thus, that judgment can be interpreted, by applying the foregoing law, as rejecting R.W.S.'s contest to the adoption on the basis that, given the finding that he was a putative father as well as the lack of evidence that he had registered on the putative-father registry and his concession that he did not register, his consent to the adoption was not necessary. See § 26-10A-7(a)(5). We conclude that, under the facts of this case, R.W.S. has failed to demonstrate that, in his status as a putative father, his consent to the adoption of the child was necessary, and, therefore, he has failed to demonstrate that the probate court erred by not including in its January 23, 2017, judgment a specific finding on the issue of his consent.
R.W.S. argues, citing the comment to § 26-10A-24, Ala. Code 1975, governing contested adoption hearings, that his "right to notice ... [under] § 26-10A-17 is meaningless if [he was] not provided with an opportunity to be heard." R.W.S. does not contend, and the record would not support an argument, that R.W.S., who was properly afforded notice of the adoption hearing, was not provided an opportunity to be heard at the January 23, 2017, hearing on the merits of his adoption contest. Accordingly, we cannot agree that the notice of the adoption action afforded R.W.S. was "meaningless," as discussed in the comment to § 26-10A-24. In making his argument on this issue, however, R.W.S. also appears to contend that the right to notice and to be heard in a contest to the adoption created for him a right to be considered a person whose consent is required for an adoption. R.W.S. cites Ex parte S.C.W., 826 So.2d 844 (Ala. 2001), in support of his argument that the probate court was required to determine that, even as a putative father who had not fully complied with § 26-10C-1, his consent to the adoption was required. In Ex parte S.C.W., supra, our supreme court held, under an earlier version of the AAC, that a putative father whose paternity had been proven and who had been made known to *994 the court though the notice provisions of the AAC could contest the adoption of his child even though he had failed to timely file a notice of intent to claim paternity on the putative-father registry. In reaching that holding, the supreme court noted that, at that time, the AAC " 'neither cross-referenced nor mentioned by name' " the Putative Father Registry Act ("PFRA"). 826 So.2d at 848 (quoting and adopting Judge Crawley's special writing, concurring in part and dissenting in part, in S.C.W. v. C.B., 826 So.2d 825, 839 (Ala. Civ. App. 2001) ). The year after that opinion was released, however, our legislature amended the AAC to reference § 26-10C-1 of the PFRA to require that a putative father both respond to the notice of the adoption proceeding and register on the putative-father registry. See Act No. 2002-417, Ala. Acts 2002; § 26-10A-7, Ala. Code 1976. Thus, Ex parte S.C.W., supra, has been superseded by statute. See also J.N.F. v. A.S., 866 So.2d 582, 586 n. 5 (Ala. Civ. App. 2003) (Thompson, J., dissenting) (recognizing that Ex parte S.C.W., supra, has been superseded by statute).
R.W.S. also argues that the record does not contain evidence that supports a finding that he consented or impliedly consented to the adoption or that the probate court found during the hearing on the merits or in its judgment that he had impliedly consented to the adoption. As discussed above, however, R.W.S.'s consent to the adoption was not necessary because the probate court found that he was a putative father and that he had not registered on the putative-father registry. R.W.S. does not explicitly argue that the evidence does not support a determination that he was the child's putative father. He does assert that he should be treated as a presumed father, but he bases that argument on evidence he submitted after the probate court had entered its adoption judgment. This court can construe R.W.S.'s argument as one asserting that the probate court erred in finding that he was a putative father and, therefore, that the probate court also erred in concluding that his consent to the adoption was not necessary. Out of an abundance of caution, we so construe that argument. In doing so, we note that the resolution of this issue also disposes of R.W.S.'s argument that, assuming that he should be considered a presumed father of the child, the evidence did not support a determination that he had consented to the adoption.
The probate court conducted a January 13, 2017, ore tenus evidentiary hearing on the stepfather's petition seeking to adopt the child. Representations in the parties' appellate briefs indicate that R.W.S. and the stepfather each testified and presented evidence at that ore tenus hearing. However, that hearing was not transcribed, and, therefore, there is no transcript of that hearing available for review by this court on appeal. In such a situation, a party may submit a statement of the evidence in order to set forth for an appellate court the nature of the proceedings and the evidence presented below; the procedure for submitting a statement of the evidence is set forth in Rule 10(d), Ala. R. App. P.[6] See *995 also Oliver v. Shealey, 67 So.3d 73, 76 (Ala. 2011) ("If no record is available in the probate court, Rule 10(d), Ala. R. App. P., designates the procedure to be followed in preparing a statement of the evidence or proceedings."). R.W.S. did not submit a Rule 10(d) statement of the evidence. Accordingly, the record before this court contains no information concerning the evidence presented during the January 13, 2017, ore tenus hearing before the probate court.
In his appellate brief, in arguing these evidentiary issues, R.W.S. refers this court only to evidence he submitted in support of his February 3, 2017, postjudgment motion. R.W.S. ignores that the probate court received ore tenus evidence at the January 13, 2017, hearing. However, this court has held:
" 'When oral testimony is considered by the trial court in reaching its judgment and that testimony is not present in the record as either a transcript or Rule 10(d), [Ala.] R. [App.] P., statement, it must be conclusively presumed that the testimony is sufficient to support the judgment.' Rudolph v. Rudolph, 586 So.2d 929, 930 (Ala. Civ. App. 1991). Furthermore, our supreme court has stated that an appellate court is limited to a review of the record, and the record cannot be changed, altered, or varied on appeal by statements in briefs of counsel. Wal-Mart Stores, Inc. v. Goodman, 789 So.2d 166, 176 (Ala. 2000), and Gotlieb v. Collat, 567 So.2d 1302, 1304 (Ala. 1990) (the appellant bears the burden of ensuring that the record on appeal contains sufficient evidence to warrant reversal). Additionally, this court cannot assume error or presume the existence of facts as to which the record is silent. Goodman, 789 So.2d at 176."
Quick v. Burton, 960 So.2d 678, 680-81 (Ala. Civ. App. 2006). See also Browning v. Carpenter, 596 So.2d 906, 908 (Ala. 1992) ("[W]hen testimony is before the trial court and is considered by the trial court in reaching its decision, and this testimony is not in the record, either in a transcript or in a Rule 10(d) statement, it must be presumed that the testimony was sufficient to support the judgment.").
For the purposes of resolving R.W.S.'s evidentiary arguments, we do not determine whether the probate court could consider the evidence R.W.S. submitted in support of a postjudgment motion, or whether the record indicates that it did so. Rather, even assuming that this court could consider that evidence, we must presume that the evidence the probate court received and considered, but which was not included by R.W.S. in the record before this court or set forth in a Rule 10(d) statement of the evidence, supports the probate court's judgment. Quick v. Burton, supra ; McMichael v. McMichael, 71 So.3d 678, 688 (Ala. Civ. App. 2011) ; and Cockrell v. Cockrell, 40 So.3d 712, 716-17 (Ala. Civ. App. 2009). Accordingly, we must affirm as to the evidentiary issues R.W.S. has asserted in his appellate briefs.
In his appellate briefs, R.W.S. primarily argues that the probate court erred in denying his request for a new trial and that it violated his due-process rights in doing so. R.W.S., for the first time in his *996 February 14, 2017, amended postjudgment motion, argued that, based on evidence he submitted in support of his original, February 3, 2017, postjudgment motion, he should be considered the "presumed father" of the child rather than as a putative father.[7] He argues on appeal that the probate court should have afforded him a new trial to consider evidence pertaining to his claim that he was the presumed father of the child rather than a putative father, as well as to determine whether he, as the purported presumed father of the child, had impliedly consented to the adoption of the child.[8]
The stepfather argues in his brief submitted to this court that R.W.S. did not timely raise his new constitutional and legal arguments, i.e., those arguments pertaining to his contention that he should be considered the presumed father of the child. A trial court has the discretion, but is not required, to consider new legal arguments advanced for the first time in a postjudgment motion. Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1369 (Ala. 1988). Our supreme court recently considered whether the holding in Green Tree had imposed a requirement that, in order for a trial court to consider an issue first raised in a postjudgment motion, the moving party had to explain why that argument had not been asserted before the trier of fact reached its decision. See Alfa Mut. Ins. Co. v. Culverhouse, 149 So.3d 1072, 1075-78 (Ala. 2014). In deciding that no such explanation is required and that the trial court in that case had not erred in considering a legal argument raised for the first time in a postjudgment motion, our supreme court stated:
"[W]e think it clear that the discretion of the trial court to consider a new argument [raised for the first time in a postjudgment motion] is paramount, and we see no reason to limit that discretion to those cases where the moving party has offered an on-the-record explanation for failing to make the belated argument earlier. The trial court is in the best position to determine whether the argument should be considered, and, in this case, the trial court specifically stated that it was 'in the interest of justice' that Culverhouse's belated argument be considered. Certainly, the trial court would *997 have been within its discretion in refusing to consider the new argument, either because Culverhouse had not offered an explanation for failing to make the argument in a timely fashion or for some other reason ...."
Alfa Mut. Ins. Co. v. Culverhouse, 149 So.3d at 1078.
In this case, R.W.S. made no argument before the probate court, and he does not address in his appellate briefs before this court, the reason for his delay in asserting for the first time in the February 14, 2017, amended postjudgment motion his new legal theory that he was the child's presumed father; had he done so, there would be no basis for his arguments, based on the trial court's denial of the motion in which he first raised that issue, that his constitutional due-process rights had been violated by the trial court's rejection of that issue when it was untimely raised for the first time.
We also conclude that R.W.S.'s arguments distinguish this case from Green Tree, supra, and Culverhouse, supra, in which the movants below sought to advance new arguments based on the issues and evidence already before the trial courts in those cases. Rather, R.W.S. also wants this court to hold the probate court in error for, he says, failing to consider evidence he submitted in support of his February 3, 2017, postjudgment motion. Thus, in this case, R.W.S. is seeking to present new evidence and make new legal arguments based on that additional evidence. R.W.S. is not seeking to have the probate court reconsider a legal issue based on the evidence already presented to it. Rather, R.W.S. is, in essence, arguing that the probate court should allow him, and require the stepfather, to relitigate the adoption action by allowing him to present new evidence and to argue a new legal theory in defending the adoption action. R.W.S. does not contend that he was not afforded the opportunity to present that evidence and those arguments during the original adoption hearing, and he does not contend he was in any way prevented from asserting that he was the presumed father of the child. Thus, R.W.S. is actually seeking more than the mere reconsideration of the action under a new legal theory, as did the appellants in Green Tree, supra, and Culverhouse, supra.
The probate court did not state a reason for its denial of the February 14, 2017, amended postjudgment motion. However, the probate court was not required to allow R.W.S. to assert, for the first time, a new legal theory or base a new constitutional argument on the probate court's rejection of that theory. See Espinoza v. Rudolph, 46 So.3d 403, 416 (Ala. 2010) ("There is no indication that the trial court considered the merits of the legal argument raised for the first time in [the appellants'] postjudgment motion, and we will not presume that it did."); see also J.S. v. J.C., 219 So.3d 666, 673 (Ala. Civ. App. 2016) ("Although the father notes on appeal that he alleged in his postjudgment motion, among other things, a due-process violation based on the juvenile court's failure to allow him to file a sworn deposition, the juvenile court was not required to consider that new legal argument raised for the first time in a postjudgment motion."). R.W.S. admits that the probate court afforded him an opportunity to present evidence at the January 23, 2017, ore tenus hearing in opposition to the proposed adoption, and that he did so. It was clearly within the probate court's discretion to reject the new legal theories in the February 14, 2017, amended postjudgment motion, both because R.W.S. failed to explain why he did not assert earlier that he was the child's presumed father and because the probate court was not required to grant that motion and afford R.W.S. a "second bite at the apple," i.e., an opportunity *998 to relitigate an action that had already been resolved. Alfa Mut. Ins. Co. v. Culverhouse, 149 So.3d at 1078. Given the foregoing, we cannot say that R.W.S. has demonstrated that the probate court abused that discretion.
R.W.S. also argues that the probate court erred in denying his "postjudgment" motion without conducting a postjudgment hearing.[9] Rule 59(g), Ala. R. Civ. P., requires that if a party requests a hearing on his postjudgment motion filed pursuant to Rule 59, the request for a hearing must be granted. In Kitchens v. Maye, 623 So.2d 1082, 1088-89 (Ala. 1993), however, our supreme court held that, although a trial court errs in not granting a hearing on a motion pursuant to Rule 59, Ala. R. Civ. P., such an error does not necessarily constitute reversible error. The "harmless-error rule" provides, in pertinent part:
"No judgment may be reversed or set aside ... for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected the substantial rights of the parties."
Rule 45, Ala. R. App. P. It is harmless error if a trial court fails to hold a hearing in violation of Rule 59(g), " 'where there is either no probable merit in the grounds asserted in the motion, or where the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court.' " Kitchens v. Maye, 623 So.2d at 1088-89 (quoting Greene v. Thompson, 554 So.2d 376, 381 (Ala. 1989) ).
In this case, we have held that R.W.S. has failed to demonstrate that the probate court erred in denying his postjudgment motions. Accordingly, we must also conclude that the failure to conduct a hearing on those motions was likewise harmless error. Rule 45 ; Kitchens v. Maye, supra.
The stepfather's motions to strike, filed in appeal number 2160344 and in appeal number 2160518, are denied.
2160344-AFFIRMED.
2160518-AFFIRMED.
Pittman, Thomas, Moore, and Donaldson, JJ., concur.

We note that, in that February 3, 2017, postjudgment motion, R.W.S. mentioned that, in mid-October 2016, he filed a paternity action in the St. Clair Juvenile Court and that that paternity action remained pending. The record contains no other information regarding that action, and R.W.S. makes no argument on appeal concerning the manner, if any, that such a paternity action might impact the adoption action that underlies this appeal.

See note 5, infra.

The Rules of Civil Procedure apply to probate-court actions. See § 26-10A-37, Ala. Code 1975; § 12-13-12, Ala. Code 1975; and Ex parte A.M.P., 997 So.2d 1008, 1013 n. 3 (Ala. 2008).

With regard to the February 3, 2017, postjudgment motion, the probate court stated:
"This motion was presented to the Court by ... counsel for [R.W.S.] on January 27, 2017, and filed for record on February 3, 2017. Said motion is automatically denied by operation of law."

As previously indicated, R.W.S. filed his notice of appeal in appeal number 2160344 on February 16, 2017, one day before the February 3, 2017, postjudgment motion was denied by operation of law. R.W.S.'s appeal was held in abeyance until the disposition of the February 3, 2017, postjudgment motion; that appeal became effective upon the denial by operation of law of the February 3, 2017, postjudgment motion. See Rule 4(a)(5), Ala. R. App. P. ("A notice of appeal filed after the entry of the judgment but before the disposition of all post-judgment motions ... shall be held in abeyance until all post-judgment motions ... are ruled upon; such a notice of appeal shall become effective upon the date of disposition of the last of all such motions.").

Rule 10(d), Ala. R. App. P., provides:
"(d) Statement of the Evidence or Proceedings When No Report Was Made or When a Transcript Is Unavailable. If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. If the appellant prepares such a statement, the appellant shall serve it on the appellee within 28 days (4 weeks) after filing the notice of appeal; the appellee, within 14 days (2 weeks) after service, may serve on the appellant objections or proposed amendments to the statement. If the appellee serves no objection or proposed amendments, then, within 21 days (3 weeks) after the statement was served on the appellee, the appellant shall file the statement with the trial court for approval. If the appellee serves on the appellant any objections or proposed amendments, then, within 7 days (1 week) after service, the appellant shall file the statement and any objections or proposed amendments with the trial court for settlement and approval. Within 21 days (3 weeks) after the filing, the trial court shall rule, settling any questions regarding the objections and proposed amendments, and issuing an approved statement of the evidence or proceedings. The statement, either as approved by the court or as issued by the court after its ruling, shall be filed with the clerk of the trial court, who shall include it in the record on appeal."

We have concluded that R.W.S. raised the "presumed father" argument, and the constitutional issues based on that argument, for the first time in his February 14, 2017, amended postjudgment motion. R.W.S. makes no contention that he had raised that issue before the probate court entered the adoption judgment, or that the probate court erred in failing to consider the evidence presented at the adoption hearing as it related to an argument that he was the child's presumed father. In his original, February 3, 2017, postjudgment motion, R.W.S. made arguments that he was a putative father of the child, and he made allegations concerning the evidence presented at the adoption hearing; that purported evidence was relevant to whether R.W.S. should be considered a putative father. Even assuming, however, that it could be said that R.W.S. had raised at the adoption hearing the issue whether he was the child's presumed father, the probate court received evidence at that hearing that is not contained in the record before this court. Accordingly, even if the issue of whether R.W.S. was a presumed father had been raised during the adoption hearing, we would affirm because we are constrained to presume that the evidence received by the probate court but not before this court was sufficient to support the probate court's judgment. Quick v. Burton, supra ; Browning v. Carpenter, supra.

As we have earlier explained, under the facts of this case, the probate court determined that R.W.S. was a putative father, and, given the facts, his consent to the proposed adoption was not required under § 26-10A-7(a)(5). The AAC does not place conditions, such as a requirement to comply with § 26-10C-1, on the requirement that a presumed father must consent, either expressly or impliedly, to an adoption. See § 26-10A-5(a)(3), Ala. Code 1975.

The stepfather does not dispute that no hearing was conducted on R.W.S.'s postjudgment motions.